BREAUX, C. J.
Plaintiff was a mortgage creditor of the defendant for $3,300 with 8 per cent, interest from July 15, 1909, and attorney’s fee, subject to a credit of $325.
She brought this suit to foreclose her mortgage via ordinaria.
Statement of the Pleadings.
Plaintiff maintains that, to secure the note he holds, the defendant Cantioto Sasarato, alias Salvadore Canteoto, became the vendee of Theresa Cusimano and her husband, Roeco Cusimano, before Robert J. Maloney, notary public, on the loth day of July, 1907, and made a note for $3,300. This note was handed to plaintiff in exchange for six past-due notes, due by Theresa Cusimano and Roe-co Cusimano, and secured by mortgage on the property which Cusimano and wife purported to sell to Canteoto in order to enable the latter to give a note secured by vendor’s privilege to plaintiff in exchange for a prior privilege and note.
The property was owned by Cusimano and wife, and the transaction with their credit- or, the plaintiff, was given the form of a sale, in order, as they thought, the better to secure him.
This method was followed under the advice of Maloney, notary and attorney.
That is, Cusimano and wife sold the property to Salvadore Canteoto, and the note given by Canteoto representing the purchase price of the property, and a note paraphed by Maloney, notary, with the act of sale, was handed by him to plaintiff. Whether it was the genuine note of Canteoto is the serious question at issue.
Three notes were made by the notary and paraphed. At least two were forged.
Defendants in their answer aver that they are ignorant; that they do not know how to speak, read, or write English; that they did not sell their property to Canteoto; that they never delivered possession of the property to him; that they received no price; that they never received the six notes for $500 each, dated April 19, 1906, before described, which plaintiff alleges he delivered to them through Maloney, notary.
It seems that these six notes of plaintiff were kept by Maloney, notary, and were- only delivered by him after his downfall and conviction.
Defendants allege that their property stands of record in the name of Salvadore Canteoto, owing to the asserted sale, which *1059 was no sale, and ihat there are outstanding against them the six notes for $500 each, dated April 19, 1906, and a note for $3,300, dated July 15, 1907.
They charge that plaintiff had full knowledge of all the facts; that Maloney, the adviser, acted for plaintiff.
That on July 15, 1907, they signed the notes by their marks, and that they are unable to state whether the note sued on by plaintiff is the note which they signed.
They ask that the sale from Mrs. Theresa Cusimano to Salvadore Oanteoto, on July 15, 1907, be decreed a simulation and the note decreed null; that the mortgage and vendor’s lien be decreed of no effect; and that Christina be'decreed not the owner of the Salvadore Oanteoto note for $3,300 of July 15, 1907.
Louis Spiro intervened in the suit. He alleged that, he is owner and holder of a note signed by Salvadore Oanteoto, dated July 15, 1907, for the sum of $3,300, which-he filed with his petition of intervention.
That this note was paraphed by Notary Maloney to identify it with an act of sale by the defendants to Salvadore Canteoto of July 15, 1907; that the note is secured by vendor’s privilege on the property in question; that the note was renewed by Robert J. Maloney up to July 15, 1908, and interest paid to July 15, 1909; that Maloney had no authority to renew this note.
That he believes that he had the genuine note notwithstanding plaintiff also holds a note. '
The plaintiff, answering this intervention, controverts the allegations of the intervener.
William Schroeder, another intervener, set up still another note for the same amount, secured by the same lien.
' 1-Ie asks that his mortgage and privilege be recognized.
Plaintiff answered this last intervention denying that this intervener has any claim.
Statement of the Facts.
There are three outstanding notes dated July 15, 1907, said to be signed by Salvadore Canteoto, as alleged by plaintiff, and identified with an act passed before Robert J. Maloney, notary, on that day.
The act passed before this notary only refers to one note of $3,300. Three notes have appeared each bearing the notary’s paraph, to the end of identifying it with the act of sale and vendor’s privilege.
Each of the two interveners holds one note and plaintiit the other, and each claims that his note is the genuine note.
The holders of the notes and mortgages, as well as the mortgagor, are not suspected of having had anything to do with forging the signatures of the makers of the notes. The act of mortgage is falsified by acts and circumstances so that it can scarcely be deemed that it makes full proof of itself.
One of the interveners, Spiro, stated that he paid $3,300 for the note by check on the New Orleans National Bank for the amount. 1-Iis statement in regard to the check was not borne out by the facts. According to his testimony, at the particular time that he claims to have bought the note, to wit, 2 p. m., the sale before mentioned had not been passed (it was passed at about 5 o’clock the same day), and yet he claims to have received the note at the time that he bought it.
Schroeder, the other intervener, testified that he had money in the hands of Notary Maloney, which, in accordance with his direction, was applied by this notary to buying the note at its face value.
The forgery charged and the notes issued, and the ignorance of the parties to the mortgages and notes, influenced as they were by a designing person, who availed himself of their confidence to impose upon them, have ■given rise to different issues.
The judge of the district court thought it *1061 advisable to appoint an expert in handwriting to assist in unraveling the tangled skein.
The learned expert appeared as a witness. He also as an expert submitted his report to the court, which was admitted in evidence.
The question whether the expert to examine the signatures on the various notes sued on was timely appointed and sworn is before us for decision.
The objection of all the parties on appeal to the suit, except the intervener, who is the appellee, is first, that the expert appointed by the court ex proprio motu after the ease had been submitted should not have been appointed, and that there was no authority to appoint him after the case had been submitted, except with consent of parties.
In passing upon this objection, we have consulted the different decisions in which similar objection was raised. It has been held, whenever necessary, courts have the power to appoint experts. Hennen’s Digest, p. 656, No. 7; Code Prac. art. 442.
They may be appointed ex proprio motu. Cameron v. Lane & Husband, 36 La. Ann. 716; O’Donnell v. Henry, 44 La. Ann. 845, 11 South. 245.
Thus far there is no ground upon which to sustain the objections urged.
It is different on the other ground before us.
The expert was appointed after the evidence had been closed and argument heard and the case submitted.
Letters were submitted to' the expert through the order of the court, the text of which was not identified nor the signature •proven.
We will here state further in regard to these letters: After the case had been submitted, as just stated, the plaintiff offered these letters, purporting to be from Canteoto written to Mrs. Cusimano and Mr. Patorno, in answer to letters written by Patorno and Cusimano, which answers of Canteoto were written in Italy, and mailed to Patorno and Cusimano in this city.
The intervener, who is one of the appellants, objected to the testimony on the ground that the case had been finally closed. In this objection, he was joined by one of the interveners, who is the appellee.
The position in support of the ruling appointing the expert is that in the interest of justice the court at any time can open a case before the judgment has been rendered.
The language of the Code of Practice (article 484) is not as broad. Says that Code:
“When both parties have produced their evidence and the argument (italics ours) has been opened, no witnesses can be heard without the consent of parties.”
Here the argument had been closed, and the case under the court’s consideration.
Besides, these letters were not admissible in evidence without proof of their genuineness. It was error to admit them.
The expert in his report properly stated that the letters afforded him no assistance, and from the appearance of things before him he considered them only “suspects,” and not original. He found that they “are both written and signed by the same person.”
Grasping the facts as well as he could, he arrived at a conclusion.
It remains that letters submitted to him as an expert had not been previously sufficiently sustained by proof.
With painstaking care he scrutinized the signatures and made a thorough analj-sis of the handwriting.
We are of opinion that further inquiry should be made into the facts going to prove who the writer is and into all other facts which may throw light on the forgery of signatures. The act of sale to Canteoto should be corroborated by other evidence. Something more should ’be ascertained in regard to Canteoto.
The facts of this case render it exceptional, and for that reason we have determined to remand it in order that our learned brother of the district court may again have the *1063 opportunity of considering other evidence on the line before suggested.
For reasons stated, the judgment appealed from is avoided, annulled, and reversed, and the law and the evidence being in favor of the appellant it is ordered, adjudged, and decreed that the case be remanded to the district court to he tried in accordance with the views herein expressed; that the costs of appeal be paid by appellee, those of the district court to await final decision.