against them for the return of the purchase price and damages.

The warrantors answered that the deed by them, to Shaver, was made in error, they having previously sold the same land to Thomas, and that the mistake was unintentional and inadvertent, and resulted solely from a clerical error in the description of the land intended to be conveyed. The warrantors tendered to plaintiffs the purchase price, with interest and costs.

It is therefore ordered that the judgment below be reversed, and it is now ordered that the defendants, L. E. Etchison, J. A. Edson, and S. B. Hicks be recognized as the lawful owners of the N. W. ¼ of the S. E. ¼ of section 15, township 20 N. of range 15 W., in Caddo parish, state of Louisiana, and be put in possession of the same according to law; and it is further ordered that this cause be remanded to the court below for trial and adjudication of plaintiffs' call in warranty; and it is further ordered that plaintiffs pay costs in both courts, without prejudice to their rights against the warrantors.

---

(57 South. 157.)

No. 18,691.

CHRISTINA v. CUSIMANO et al.

(Nov. 27, 1911.  Rehearing Denied Jan. 2, 1912.)

*(Syllabus by the Court.)*

1. APPEAL AND ERROR (§ 1097*)—REVIEW—SUCCESSIVE APPEALS—LAW OF THE CASE.

Where a motion to dismiss an appeal has been overruled by this court, and the judgment has become final, the matter is concluded, and will not be inquired into on grounds considered in such judgment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4358–4368; Dec. Dig. § 1097.*]

2. PLEADING (§ 248*) — AMENDMENT — PETITION—NEW CAUSE OF ACTION.

Where suit is brought on a mortgage note received as a substitute for other notes similarly secured on the same property, an amend-ment to the petition, praying, in the alternative, that, should it be found that plaintiff cannot recover on the note sued on, he be allowed to recover on those which he surrendered in exchange for it, does not change the substance of the demand or ask a different remedy, and is properly allowed.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 686–709; Dec. Dig. § 248.*]

3. BILLS AND NOTES (§§ 497, 525*)—ACTIONS—BURDEN OF PROOF—SUFFICIENCY OF EVIDENCE.

Where it is shown that a mortgage note left in the hands of a notary to be delivered on certain conditions to a particular person has been fraudulently disposed of, the burden of proof rests upon a subsequent holder seeking to recover to show that he acquired the note in good faith before maturity and for a valuable consideration; and, where such holder, as a witness in his own behalf, testifies that he acquired the instrument from the notary at a certain hour on the day of its issue, and paid for it with his check for the amount expressed upon its face, whereas, his account in the bank shows that no such check was paid, and other evidence shows that the note had not been made at the hour stated, the burden of proof is not discharged, and there can be no recovery.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1675–1687, 1832–1839; Dec. Dig. §§ 497, 525.*]

4. APPEAL AND ERROR (§ 485*)—EFFECT OF TRANSFER OF CAUSE—ISSUANCE OF EXECUTION.

Where suit is brought on a mortgage note, which is identified with a particular act, and other persons intervene, claiming upon similar notes, which they assert are the genuine ones, and there is judgment in favor of one of the parties, holding his note to be genuine and rejecting the claims of the others, and the others obtain orders granting them appeals, suspensive and devolutive, and fixing the amount of the bonds to be given, and they give the bonds and perfect the appeals, the party in whose favor the judgment is rendered has no capacity to ignore the orders of the court and issue execution. Where an appellant gives an insufficient bond, the remedy of the appellee lies in an application to the court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2264–2274; Dec. Dig. § 485.*]

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

Action by Frank Christina against Mrs. Theresa Cusimano and others, and Louis Spiro and others intervene. From the judgment, Spiro and another appeal. Affirmed.

Joseph Lautenschlaeger and Benjamin R. Forman, for appellant Spiro. Alfred D. Danziger, for appellant Dreyfous. Frank E. Rainold, for appellee Christina. P. J. Patorno, for appellees Rocco and Theresa Cusimano and Salvatore Cantioto.

## Statement of the Case.

MONROE, J. Plaintiff brought suit on a note for $3,300, purporting to have been made by a person whose name really appears to be Salvatore Cantioto, to his own order and by him indorsed, dated July 15, 1907, payable in one year, with interest, and secured by mortgage on certain real property in this city. He alleged that he acquired the note from Rocco Cusimano and his wife, Theresa Cusimano, who acquired it from Cantioto, in part payment of the purchase price of said property; that he gave said Rocco and Theresa Cusimano, in exchange for said note, six notes, each for $500, made and indorsed by them, dated April 19, 1906, payable in from one to six years, and secured by mortgage and vendor's lien on the property mentioned, which notes he acquired as the vendor of said property. He further alleged that he had been paid $325, which was duly credited on the note sued on, and he prayed for citation and for judgment against the Cusimanos and Cantioto for the amount of said note, with interest, attorney's fees, and costs, less $325, and with recognition of the mortgage by which said note purports to be secured.

The Cusimanos answered, in effect, that they purchased the property referred to in the petition from the plaintiff on April 19, 1906, and gave in part payment of the purchase price six notes of $500 each made by Theresa Cusimano, with Rocco Cusimano, her husband, to authorize her; that, at plaintiff's request, they on July 15, 1907, repaired to the office of Robert J. Maloney, notary, where they were made to affix their marks to an act which, they are now informed, purports to be an act of sale of said property to Cantioto, and to a note for $3,-300; that they are illiterate and are unable to speak, read, or write English; that said purported sale was not a sale; that they never delivered the property to Cantioto, never received the $2,500, which, the act declares, was the cash portion of the price, never received the six notes of $500 each, which plaintiff alleged he surrendered; and that they found that their property stood in the name of Cantioto, and that there were outstanding against it the seven notes mentioned. They further alleged that all this was brought about at the instance of plaintiff, and that they did not understand it; that Cantioto was in Italy, and was here represented by a curator ad hoc; that the property in question was the separate property of Theresa Cusimano; that Maloney acted as the agent and adviser of plaintiff, and that they paid him in that capacity at different times sums aggregating $410. They prayed that the pretended sale to Cantioto be decreed a simulation; that the note and mortgage given and executed in connection therewith be decreed of no effect; and that plaintiff be decreed not to be the holder for value of the note sued on. The curator ad hoc, appearing on behalf of Cantioto, filed a general denial.

Louis Spiro intervened, alleging that he was the owner of the genuine Cantioto note for $3,300, that it was renewed, by Maloney, up to July 15, 1909, and interest paid, but that Maloney was without authority to renew it.

William Schroeder intervened, alleging that he was the owner of the genuine Cantioto note, and praying to be so recognized. Plaintiff answered, alleging that the signatures on the notes held by the interveners were forged. There was a trial, in the course of which, the expert appointed by the

court reported 'that the note held by Spiro was genuine, and that the others were forged, and there was judgment in favor of Spiro and against Rocco Cusimano and Cantioto in solido for $3,300, with interest, recognition of mortgage, etc., and directing that the property in question be sold, for cash, without appraisement, and that Spiro be paid by preference, out of the proceeds; the concluding paragraph of the judgment, however, limiting its effect as to Cantioto to the property.

From the judgment so rendered (which was signed Jany. 3, 1910), the plaintiff and Schroeder appealed on January 7, 1910; and an appeal was granted to the "defendant" on March 9,. and lodged in this court on March 11, 1910. Thereafter, on March 31st, an agreement signed by the different counsel, to the effect that the Cusimanos and Cantioto should be considered parties to the appeal, was filed in the record; and shortly afterwards, on a motion to dismiss the appeal of the Cusimanos, it was held that the agreement was binding on the parties. Christina v. Cusimano et al., 125 La. 1063, 52 South. 157. Considering the merits, the court concluded that further inquiry should be made into any and all facts which might throw light on the forgeries; that the act of sale to Cantioto should be corroborated by other evidence, and that something more should be ascertained concerning Cantioto, and the case was therefore remanded, to be tried in accordance with the view thus expressed. Christina v. Cusimano, 125 La. 1062, 1063, 52 South. 157.

When the matter again reached the district court, additional pleadings, to which we shall refer hereafter, were filed on behalf of plaintiff and defendants. Jules S. Dreyfous intervened, alleging that pending the appeals from the original judgment the property involved in the litigation had been sold by the sheriff under a writ of fi. fa. issued at the instance of Spiro, and had been purchased by him, and praying that the title so acquired be sustained, and there were some other pleadings, after which and after hearing evidence and argument there was judgment decreeing the nullity of the alleged sale to Cantioto, rejecting the demands of Spiro, Schroeder, and Dreyfous, condemning the Cusimanos on the six notes sued on (in the alternative) by plaintiff, ordering that the property affected be sold, and that plaintiff be paid, by preference, from the proceeds; that each intervener pay the costs of his intervention; and that the balance of the costs be paid by the Cusimanos. From the judgment so rendered, Spiro and Dreyfous have appealed.

We find the facts of the case to be as follows:

The Cusimanos (man and wife), who can neither speak nor understand English, nor read nor write in any language, had acquired two lots of ground, or an interest in two lots, by paying the price in small monthly installments, and had built, or had begun to build, a house on them, the purchase having been made in the name of the wife, though there is no suggestion that it was with paraphernal funds; but they concluded that they needed more money for their building operations, and an arrangement appears to have been made whereby the title was placed in the name of Christina, who on April 19, 1906, executed an instrument purporting to be a sale of the property to them for $4,000, of which, according to the act, $1,000 was paid in cash, and the balance was represented by their six notes of $500 each. The $1,000, as we infer, was the amount that they had already paid, and the six notes were given for $3,000 in cash, which was then and there loaned to them by Christina. The first of the six notes fell due in April, 1907, and, as it was not paid, Christina instructed or authorized his wife to see about it, and she saw Maloney, the

notary who had attended to their business for them, and who, as it turned out afterwards, was about that time, and had been engaged in various fraudulent practices, and particularly in the practice of forging and issuing for his own benefit multiples of genuine mortgage notes executed in his office and paraphed by him. The Christinas being as ignorant and helpless as the Cusimanos, Maloney, giving some foolish reason, told them that it would be better for the Cusimanos to make a transfer of the property in the form of a sale to some third person, and, taking his note as in part payment of the price for a sufficient amount to cover that represented by the notes held by Christina, exchange the one for the others; and, as between the notary and the wives of the two Italians, that plan was agreed on, and Cantioto, a poor cousin of Mrs. Cusimano's, who was living with them and at their expense, was selected as the third person who was to take the title in his name and issue the note, with the understanding, however, that he was to execute a counter letter showing the real nature of the transaction. The notary accordingly some time in June drew up an act whereby Mrs. Cusimano, aided by her husband, was apparently to sell the property to Cantioto. For some reason, not explained, he did not get the parties together until July 15 (1907), and he then appears to have found that there were quite a number of errors in the act which he had prepared, which errors he proceeded to correct by erasures and interlineations to which no reference in the margin or otherwise was made. As thus corrected, the act was signed by Cantioto, and received the mark of Mrs. Cusimano, and it appears to have received the mark of Rocco Cusimano, but in point of fact he was not there, and did not then or at any other time make the mark that is attributed to him. The execution of the act also appears to have been witnessed by M. R. Newhauser and J. V. Le Clerc, but they testify that they were not present, and that they signed as witnesses at some other time, neither of them knowing exactly when. Mrs. Christina, who acted as her husband's agent in the matter, had in the meanwhile left the past-due $500 note with the notary, and on the morning of July 16th brought down the other five notes which were held by her husband and received, in place of the six (with accrued interest), the note for $3,300, originally sued on in this case, together with a policy of insurance upon the buildings, as per the act of sale and mortgage purporting to secure said note. The notes issued by the notary to Spiro and Schroeder each, like that issued to plaintiff, purports to be the identical, and only note executed by Cantioto. Schroeder having retired from the contest, we have to deal only with the other two notes. The expert appointed by the district court found that the note held by Spiro is the genuine one, and that the others are forged, and we are satisfied that he was right in his finding. Upon the first trial of the case, however, Spiro testified positively that he got the note from Maloney on July 15th, and that he gave for it his check on the New Orleans National Bank for $3,300. Counsel for plaintiff thereafter offered in evidence a copy of his account with the bank mentioned covering the period between June 8th and August 2d, and it shows that no check for $3,300 was paid during that period, and neither then nor on the second trial of the case did Mr. Spiro make any satisfactory explanation. As the matter stands, therefore, it cannot be said that there is any evidence in the record which would enable a court to say that he acquired the note held by him for a valuable consideration. Beyond that he testified that he got the note from Maloney between 1:30 and 2:30 p. m., but Mrs. Cusimano testifies that the execution of the note and the act did

not take place until about 5 o'clock p. m. Again, it appears that Mr. Spiro makes something of a business of buying and selling real estate, and is a frequent invester in mortgage notes; and yet, though the act with which the note in question is identified contains the provision:

"The purchaser hereby binds himself to keep the buildings on above described property constantly insured against the risk of loss by fire and to transfer such insurance to the present owner or any other holder or holders of above described note, up to the full amount of such note"—

and though a policy of insurance was delivered to Mrs. Christina, with the note that was given to her, Mr. Spiro testifies that he received no transfer of insurance, and at that time made no inquiry upon the subject. Further still, the act with which the notes in question are identified (for there is no question as to the genuineness of the paraph on either of them) makes no provision whatever for the mortgage resting on the property to secure the $3,000 represented by the six notes held by plaintiff. To the contrary, the act contains the recital:

"By reference to the certificates of the register of conveyances and recorder of mortgages in and for the parish of Orleans, annexed hereto, and from the United States District and Circuit Courts of this district, it does not appear that said property has been heretofore alienated by the said vendor herein or that it is subject to any incumbrances whatever."

The fact is that the property was then incumbered by the mortgage in favor of the plaintiff for $3,000, with interest, etc., imposed by the notarial act of April 19, 1906, and that no attempt was made to release that mortgage until July 25, 1907, when an act of release, executed by Paul W. Maloney, notary (brother of Robert J. Maloney), was filed in the recorder's office. That act recites that J. Vic Le Clerc appeared before the subscribing notary as the last holder of the five notes that plaintiff had surrendered, and declared that they had been paid in full; that he exhibited them to the notary, duly canceled and erased, and authorized the release of the mortgage by which they were secured. On the other hand, Le Clerc testifies that while he signed the act of release he never was the owner of the notes; that he got them from Robert J. Maloney; and (being shown the notes) that they were never paid while in his possession and were never, at any time, canceled or marked paid, and he is corroborated by the notes themselves which are in the record uncanceled.

On January 7, 1910, which was within 10 days from the signing of the judgment rendered on the first trial of the case, Schroeder and Christina each obtained an order granting him a suspensive and devolutive appeal on furnishing a bond for $500, and the bonds were duly furnished and the appeals duly lodged here, under the number 18,098. On January 28th Spiro caused a writ of fi. fa. to be issued under the judgment thus appealed from, and the sheriff by virtue of said writ seized the property here in question, and advertised it for sale. On March 9th a devolutive appeal was granted to "defendant," on motion of counsel for "defendants," for which a bond was furnished by Mrs. Cusimano, and the appeal was duly brought up. On March 10th the sheriff adjudicated the property which he had seized and advertised to Jules S. Dreyfous for $4,950, of which amount $495 was paid on account. On March 31st a motion was filed in this court by counsel representing the Cusimanos and Cantioto, to which was attached a written instrument, signed by the counsel for all the other litigants. embodying an agreement to the effect that the Cusimanos and Cantioto "be and they are hereby made parties to the appeal." Thereafter a motion was filed on behalf of Spiro to dismiss the appeal which had been granted on motion of counsel for "defendants," and on April 11th the motion was denied;

the court saying, with reference to the agreement above mentioned:

"This agreement, though filed as before stated, was entered into, as shown by the date on the face of the paper, on March 18, 1910. In the presence of such an agreement, we will not stop to consider the objections urged to the appeal. We must give effect to this agreement. It evidences a consent that parties be made parties to the appeal among counsel that is conclusive and binding."

In the record which was last brought up we find some testimony given by Mr. Ricker, the chief deputy of the civil sheriff, upon the subject of the course that has been pursued by the appellant, Mr. Dreyfous, since the adjudication to him of the property. Mr. Ricker testifies that the counsel for Christina and for Schroeder objected to his proceeding to sell the property; that the adjudicatee paid $495 on the day of the sale, and has paid nothing since; and that he has not complied with the adjudication. Being asked, "Has he ever offered to comply with the adjudication?" the witness answered:

"Well, I don't know. The title has been referred to Mr. Danziger, and he has not reported on it. They have not complied with the adjudication."

He is then cross-examined by Mr. Danziger (counsel for Dreyfous) as follows:

"Q. Has any demand been made by you for us to comply, as it has been termed; in other words, to pay the balance of the purchase price? A. I asked you, several times, whether you intended to comply. That was before the Supreme Court passed on the question. You said you were going to wait to see how this came out. Q. Have any steps been taken by your officer to enforce the compliance by demanding the balance of the purchase price? A. No, sir. Q. As a matter of fact, the sheriff's office doesn't require the purchaser to comply—don't you wait upon the action of the plaintiffs? A. Once in a while I call and see the lawyer, and ask him how he is getting along with it. Q. That is what you did in this case? A. Yes, sir; never made any personal demand on Mr. Danziger. The question in dispute in this appeal was pending then, and Mr. Danziger said he preferred to wait. By the Court: For the Supreme Court to decide the case? A. Yes, sir. By Mr. Patorno: Since the Supreme Court decided the case has there been no (any) attempt on the part of Mr. Danziger to comply for his client? A. He has not complied. By Mr. Danziger: Has any one of the attorneys for any party to this suit asked you to take proceedings of any kind to force the adjudicatee, or to have the adjudicatee, to pay the balance of the purchase price? A. No, sir."

Opinion.

[1] Counsel for the appellant Spiro renew the discussion of the question of the appeal as between Rocco Cusimano and their client, and argue that the former judgment of the district court could only have been reversed to the extent that it affected the claims of Christina and Schroeder. We are, however, of opinion that the matter is closed by the judgment rendered, which held that the agreement of the counsel to the effect that the Cusimano and Cantioto "be and they are hereby made parties to the appeal" was binding.

[2] It is further argued on the basis of objections that were made on the trial that plaintiff and defendants were improperly allowed to amend their pleadings. We do not concur in that view. Plaintiff brought suit on a mortgage note which he assumed, and had a right to assume, was genuine, and which he alleged, not only in his petition, but in his original answers to the interventions, had been accepted by him in exchange for other notes, which he knew to be genuine, which (with the accrued interest) called for a like amount, and which were secured by mortgage and vendor's lien on the same property. The developments on the first trial showed that a fraud had been perpetrated, and that the note upon which he had sued was one of three, two of which must necessarily have been forged. When, therefore, the case was remanded, in order that the fraud should be thoroughly investigated, he amended his pleadings by setting up the notes originally held by him, and praying that he have judgment on them in the alternative, and in the event that it should be found that the note that he had received in exchange for them was not what it had

been represented to be. There has been no change either in the substance of his demand or in the relief sought; for the original demand was for $3,000 money loaned, with interest and with recognition of mortgage rights on certain property, and the same $3,000, with interest and mortgage rights are now demanded. The defendants the Cusimanos alleged originally that the notarial act executed before Maloney evidenced no real sale, but was a mere sham, and that they had been tricked into a position where they found their property standing in the name of Cantioto, with the six notes which they had issued and the note which Cantioto had issued outstanding against it, and they prayed that the pretended sale to Cantioto be "decreed a simulation and no sale at all, and that the note given in connection therewith and claimed to be owned by plaintiff (note for $3,300 July 15, 1907) be decreed to have no force and effect, and not to bear against the property of defendants."

Cantioto, through a curator ad hoc, filed a general denial; but neither he nor the other defendants appear to have answered the interventions at all, nor do we find that on the original trial any judgment by default was rendered against them. The answers to the interventions filed by them when the case was remanded were not amended answers therefore, but were original answers, in which the Cusimanos allege that the pretended sale to Cantioto is null and void for the reasons (1) that the act was not signed by Rocco Cusimano, and was signed by no one in the presence of two witnesses; (2) that Theresa Cusimano never heard it read, in its present form, and was unable to read it herself: (3) that it was a fraud, because no sale was intended; (4) that material alterations have been made in the act, without their knowledge or consent; (5) that the notes held by the interveners are not secured by mortgage under said act; (6) that interveners paid nothing to appearers for their notes and acquired them, if at all, from one not the owner; (7) that interveners never acquired said notes at all, and in which Cantioto denies that he bought the property in question or paid anything for it, alleges that it belongs to the Cusimanos, and further alleges that he signed one note for $3,300, for which he received no consideration, and the holder of which he does not know.

[3] The intervener, Spiro, denied under oath that the counsel who appeared for the Cusimanos and Cantioto on the second trial was authorized to represent them. So far as the Cusimanos are concerned, they, or rather Mrs. Cusimano and her daughter, were present and testified during the trial, and, as Mrs. Cusimano is shown to have been acting for her husband throughout, we think the authority of the counsel by whom they were examined was sufficiently apparent. As to Cantioto, there is some testimony concerning a power of attorney said to have been sent by him to Cusimano's son-in-law, by whom it seems likely that the counsel was employed. The testimony is not very definite, however, and, if it were at all material, we should perhaps hold that the authority has not been sufficiently proved. As matters stand, the evidence is conclusive to the effect that as between the plaintiff and the defendants, and as between the defendants inter sese, the whole purpose of the transaction originated and carried through by Maloney was to enable the Cusimanos to obtain delay for the payment of the notes held by plaintiff, and, to that end, to substitute for those notes a single note, secured in the same way, for an amount equal to the aggregate of the others, with the accrued interest, less what had been paid on account. The genuine note executed by Cantioto (who had no interest in the matter) was left with Maloney, in trust, to be delivered to plaintiff, upon his surrendering the notes held by him, and plaintiff's notes were delivered to Maloney on condition that he, plaintiff,

should receive the genuine Cantioto note in exchange for them. When, therefore, Maloney delivered the genuine Cantioto note to Spiro, he did so in fraud, and the disclosure of the fraud imposed on Spiro as a prerequisite to his right to recover against the maker the burden of proving that he acquired the note in good faith before maturity and for a valuable consideration, and even that proof would not entitle him to any preference quoad the mortgaged property, over the plaintiff, because, when the note was issued, and when Spiro says that he acquired it, plaintiff mortgage was of record, valid, and subsisting, and the condition upon which it might have been canceled, to wit; that he should receive the genuine Cantioto note, secured by a like mortgage, was not complied with. Spiro has not discharged the burden to which we have thus referred. He went on the stand, upon the first trial, as a witness in his own behalf, and swore, not casually or uncertainly, but specifically, emphatically, and with repetition, that he had acquired the Cantioto note from Maloney on July 15, 1907, between 1:30 and 2:30 o'clock p. m., and that he had paid for it on that day with his check on the New Orleans National Bank for $3,300, whereas his account taken from the books of the bank shows that no such check was paid, and from other evidence it appears that the Cantioto note was not made until about 5 o'clock in the afternoon. We conclude, therefore, that he did not get the note as he says he did, and as there is no other evidence on the subject, that he has failed to show that he acquired it in good faith before maturity, or for value, and hence is not entitled to recover on it. We may add that, according to the evidence in the record, the property in question belonged to the community, presumed to exist, between Rocco Cusimano and his wife, from which it follows that Mrs. Cusimano had no power to alienate it, and, as her husband took no part in the act, that the pretended sale is void on

that account. [4] We have seen that plain-. tiff and Schroeder, each asserting a claim superior to that of Spiro against the property here in dispute, obtained orders granting them appeals, suspensive and devolutive, from the judgment rendered in favor of Spiro, that they perfected those appeals, and that whilst they were pending Spiro caused execution to issue on his judgment, under which the property was seized and adjudicated to Dreyfous; and we have also seen that Dreyfous has never complied with the adjudication, but, speaking through his attorney, has informed the sheriff that he preferred to await the result of the present litigation. We are of opinion that Spiro had no capacity to ignore the order of the court whereby the execution of his judgment was suspended. Where an appellant gives an insufficient bond, the remedy of the appellee lies in an application to the court. Whether Mrs. Cusimano should be held liable, with her husband, on the notes held by the plaintiff, is a question which has not been raised..

Judgment affirmed.