LUTHER E. HALL, Judge pro tern.
Plaintiff sued defendant for $6,145.81 alleged to be due under a certain written contract relative to a truck-tractor and trailer which plaintiff contended is a “lease-purchase” agreement amounting to a sale. Plaintiff also sued for $83.71 cost of repairing the tractor clutch, and for certain storage charges.
The defendant contended that the contract was one of lease with an option to purchase, and defended on the ground that the tractor and trailer were not suited for the purpose for which contracted.
The District Judge held that the agreement was a lease, that the equipment was not suited for the purpose for which leased, and rendered judgment in favor of the defendant dismissing plaintiff’s suit. Plaintiff appealed.
The contract sued upon is denominated a “Lease agreement” and, generally speaking, provides for the lease by plaintiff to defendant of a certain tractor and trailer, therein described, for a period of 12 months commencing on the 10th day of April 1958 at a rental of $558.71 per month for 11 months and $508.71 for the last month. As a further consideration for the lease the defendant lessee was given the option during the term of the lease to purchase the leased property for the price and sum of $6,704.52 with the understanding and agreement that all rentals paid would be credited against the purchase price.
Both appellant and appellee, devoted a great deal of attention to a consideration of the question whether the agreement was a sale or a lease, but in our opinion the decisive issue is not the character of the agreement but whether the equipment was capable of doing the work it was supposed to do.
The plaintiff is a partnership engaged in the business of selling, leasing, and servicing of all types of trucks and truck equipment — particularly heavy duty tractors and trailers for use in interstate hauling.
The defendant is in the wholesale floor tile business in the city of New Orleans. He purchases the tile from manufacturers in Houston, Texas, and Akron, Ohio, and brings it in on truck-trailers. His operations are such that he requires vehicles capable of transporting 34,000 to 36,000 pounds of materials between Houston and New Orleans and Akron and New Orleans. *186 Defendant’s business, his operations and requirements were well known to plaintiff.
Defendant being desirous of obtaining the use of a tractor and trailer suitable to his needs, entered into negotiations with plaintiff and explained to him in detail that he needed a vehicle capable of hauling loads of tile weighing 34,000 to 36,000 pounds cross-country from Houston and Akron to New Orleans and that the vehicle must meet Interstate Commerce Commission regulations. Plaintiff stated that he could supply defendant with a tractor and trailer which would meet his needs. The negotiations culminated in the contract sued upon.
The record is clear, and indeed it is not disputed, that plaintiff represented to defendant that the tractor and trailer covered by the contract were capable of doing the work required by defendant.
On Wednesday, April 9, 1958 plaintiff sent the tractor and trailer to defendant’s place of business for inspection. Defendant and an employee of his, Edward Robins, inspected the equipment and noted that one rear view side mirror was missing and that the other side mirror was tied on with baling wire. Also, there was no dimmer switch for the headlights and several other obvious defects were noted.
However on plaintiff’s assurance that these defects would be remedied at once, defendant signed the agreement on Thursday April 10 th.
On the afternoon of Friday, ApriMlth, defendant sent his truck driver, Irvin Phillips, to plaintiff’s place of business to get the equipment as it was necessary for defendant to pick up a load of tiles in Houston on the following Monday. Upon arrival at plaintiff’s place of business Phillips inspected the equipment and noted additional defects, such as a burned out headlight, headlight dimmer switch wired improperly so that one headlight would be dim while the other was bright, gearshift lever extremely hard to work, transmission cover loose with two bolts missing, one tire worn out and dry rotted, light connection coupling between tractor and trailer mismatched and would not meet, electrical wiring bare due to worn insulation.
Phillips reported the defects to plaintiff and was informed that all repairs would be made by Saturday afternoon at which time he could pick up the equipment, but the repairs had not been completed when defendant, Robins and Phillips returned on Sunday. Defendant and his two employees completed the repairs themselves and on Sunday at approximately 5 P.M. defendant’s truck driver, Phillips, departed for Houston driving the tractor and pulling the empty trailer.
Defendant was so concerned about the condition of the equipment that he instructed Phillips to return immediately to New Orleans if Phillips felt that the tractor was not capable of making the round trip to Houston.
Phillips experienced difficulty with the gear shift before he got out of New Orleans and in going over the Claiborne Avenue overpass the tractor seemed to be pulling a full load rather than an empty trailer. When Phillips got a short distance past the overpass near Kenner, Louisiana, he decided to return to New Orleans, because the transmission was rough in shifting and the tractor seemed to be straining.
Phillips turned the equipment around and started back toward New Orleans. When he reached and was crossing the Kenner overpass he felt a lurch and discovered that the transmission was jammed and that he could not shift into a low gear ratio. He managed to keep control coming down the overpass and was able to park it off the highway at a service station. He then telephoned the defendant, who in turn notified plaintiff, of what had occurred, and plaintiff sent a mechanic out to get the equipment.
Later that Sundáy night defendant informed plaintiff that the equipment obviously was unfit for defendant’s needs and *187 that he would not accept it. It is noted that this was within three days immediately following the signing of the contract.
Plaintiff sought to repair the tractor and in doing so discovered that an oil scoop (a small cup spot welded to one of the gears) had broken off and had fallen between the gears, thus jamming the transmission. Also, the friction disk on the clutch was burned out.
Plaintiff flushed the transmission and repaired the clutch and tendered the tractor back to defendant on Tuesday April 15, 1958, and defendant refused to accept it.
In August 1958 during the pendency of the suit in the trial court, plaintiff after giving due notice to defendant, sold 'both the tractor and the trailer for an aggregate amount of $3,884.00 and in supplemental pleadings reduced his claim by this amount. It is noted that the sales price was only slightly more than half of the price or rental stipulated in the contract.
We see no need for any further discussion of the testimony. It is clear to us, as it was to the District Judge, that the equipment was in extremely poor condition and was altogether unfit for the purpose for which it was sold or leased and could not do the work which plaintiff had represented it could do. We are further convinced that it could not be put in condition to do the work.
In our opinion it is immaterial to determine whether the contract sued upon is a sale or a lease, since plaintiff cannot recover in either event.
If the contract amounted to a sale as contended by plaintiff it is subject to redhibition.
“Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice.” LSA-C.C. Art. 2520.
“A declaration made in good faith by the seller, that the thing sold has some quality which it is found not to have, gives rise to a redhibition, if this quality was the principal motive for making the purchase.” LSA-C.C. Art. 2529.
“The buyer who institutes the red-hibitory action, must prove that the vice existed before the sale was made to him. If the vice has made its appearance within three days immediately following the sale, it is presumed to have existed before the sale.” LSA-C.C. Art. 2530.
“A declaration made by the seller, that the thing sold possesses some quality which it knows it does not possess, comes within the definition of fraud * * * ” LSA-C.C. Art. 2547.
See also: Kuhlmann v. Purpera, La.App., 33 So.2d 84; Dougherty v. Petrere, 240 La. 287, 123 So.2d 60; Route v. Smith Chevrolet Co., La.App., 128 So.2d 58; Remington Cash Register Co. v. Kerr, 19 La.App. 8, 139 So. 504.
If the contract is a lease LSA-C.C. Art. 2699 is pertinent:
“If, without any fault of the lessor, the thing cease [s] to be fit for the purpose for which it was leased, or if the use be much impeded * * * the lessee may, according to circumstances, obtain the annullment of the lease, but has no claim for indemnity.”
Thus we see that even if the lessor was without fault (and we do not consider that to be the case here) the lessee is entitled to annullment.
For the foregoing reasons the judgment appealed from is affirmed.
Affirmed.