## No. 1255.

### CHARLES O'DONNELL VS. HENRY, FORREST & CO.

The defendants do not set forth in their answer any right to a call in warranty.

It is not a case of personal warranty within the meaning of Art. 379 of the Code of Practice.

There were measurements and estimates to be made. The court did not exceed its discretion by appointing experts to obtain further information.

The plaintiff and the defendants having agreed, in case of disputes or differences as to the construction of their contract, or the sufficiency of the performance of any of the work to be done under it, or the price to be paid, to submit them to the civil engineer in charge, who was to consider and finally decide them, are bound by the measurements made, and by the decision of the selected arbiter.

The hasty utterances of the arbitrator, without knowledge of all the facts, can not be construed as modifying or changing the terms and conditions of a contract, one of the clauses of which reads:

No extension of time or alteration of this contract is in any way to be considered or allowed, unless the same be in writing, properly signed by the parties and attached to this agreement.

APPEAL from the Fourth District Court, Parish of Caldwell. *Wear, J.*

*Boatner & Lamkin* for Plaintiff.

*S. H. Gilbert* for Defendant.

The opinion of the court was delivered by

BREAUX, J. Jay Gould entered into a contract with I. A. Henry to construct the extension of the Houston Central, Arkansas & Northern Railroad Company from Riverton station, on said road, in the parish of Caldwell, to Alexandria, La.

For the work, when completed and accepted by the engineer of the road, the contractor was to receive, under the terms of the contract, as follows:

In earth, per cubic yard of work, 16 cents; in loose rock, per cubic yard of work, 45 cents; in solid rock, per cubic yard of work, 85 cents; for clearing and grubbing, per acre, $60.

The firm of which Henry was a member undertook to carry out this contract.

Plaintiff became a sub-contractor on grade work, under the firm of Henry, Forrest & Co., to grade section 6 of the railway, for the price just mentioned, per cubic yard for earth work, and 35 cents for loose rock work, and 75 cents for solid rock, per cubic yard.

The contract provided for estimates, under the direction of the railway engineer, at the close of each month, of the amount and value, as near as practicable, of work done, and within thirty days the defendant was to pay the amount of said estimates, less 10 per cent.; the commission was withheld to enforce compliance with the contract.

Upon completion of all the work in the time and manner agreed upon, it was agreed that the engineer should make a final statement of all the work done.

It was also stipulated in the contract that in case any dispute or difference arose as to the construction to be placed upon the agreement as to the sufficiency of the work to be performed, or the price to be paid, it was to be referred to the engineer of the H. C., A. &

N. R. R. Co., who was selected by both parties to consider and decide all such disputes and differences.

It was agreed that his decision should be final and binding.

A difference arose during the progress of the work, as to whether the work was to be classed as earth work or as work in solid or in loose rock.

### PLEADINGS.

The plaintiff alleges as due him on earth work, 67,884 yards at 16 cents ...$10,861 44
Loose rock, 25,000 yards at 35 cents..... .. ......... ................ ............... .. 8,750 00
Solid rock, 17,400 yards at 75 cents.... .. ..... .. ... ..... .. ... ......... . ............ 13,050 00

Total ................. .. ..... ... ...    ... ...........................................  ..... $32,661 44
On which he admits to have received ....... ...... .. ................ .... .. ..... .... $22,136 05 1-8

Balance............ .. .. ........ . .    ..... . .  .. ...... ......................... ......... ...$10,524 93

The plaintiff further alleges that the difference was referred to the engineer of the company, who decided that the work should be classed as "solid rock," under the specifications forming part of the contract.

The defendant called the H. C., A. & N. R. R. Co. in warranty.

The railway company excepted to the call in warranty on the ground that the answer of the defendant showed no cause of action; that neither the petition in the suit nor the answer alleges any parity of contract between the plaintiff and said company, nor other reason justifying a call in warranty.

The District Court maintained the exception and dismissed the call in warranty.

The ruling maintaining the exception is correct, for the records do not disclose that the H. C., A. & N. R. R. Co. was a party to the contract between the plaintiff and the defendant, or that it ever received its approval.

It is not shown that the consent to transfer, or sub-contract, required by one of the articles of the agreement, was ever obtained.

Plaintiff does not allege any indebtedness on the part of the warrantor, nor does it appear that there was any privity between them.

The defendants do not resist, in argument, the dismissal of the call in warranty.

They do not set forth in their answer any right under the contract.

They do not pretend that the railway company is liable to them for the amount claimed in case judgment be rendered against them. C. P. 378, 379 and 384; Hackett vs. Schiele & York, 19 An. 67; DeGreck vs. Murphy & Gains et al., 22 An. 297.

### Bill of Exception.

The defendants applied to the court for the appointment of experts, alleging that the accounts between plaintiff and defendants were numerous, extensive and intricate; that intelligent classification and estimate of plaintiff's work was a matter peculiarly within the knowledge of civil engineers.

The application was granted, and experts were appointed over the opposition of plaintiff.

The bill of exception retained to the ruling of the court sets forth that "there is no issue in the case, nor disputed facts which can "legally be referred to experts for a report, and that the classifica-"tion of the work must, under the contract, have been settled by "the railroad company's engineers at the time the dispute arose."

The court a qua did not exceed the discretion with which it is vested in making the appointment.

Experts may be appointed when necessary to obtain information. C. P. 442.

The attention of the court is invited by the plaintiff to his opposition to the report of the experts.

The opposition reiterates the grounds incorporated in the bill of exception reserved to the appointment of experts, and further sets forth:

"That the engineer of the railroad company under the contract "was the proper and only person who could classify the work done, "or material removed, and that this must have been made and de-"termined at the time the dispute arose."

These and other grounds of opposition alleged would not have justified the excluding of the report. They present questions to be considered on the merits, in determining the weight to be given to the report.

### Statement of Facts.

Plaintiff's witnesses testify that he suspended work on section 6 on account of the before mentioned difference and dispute about the classification given, and that he only resumed when the engineer pronounced the material "solid rock" and promised plaintiff compensation on that basis for its removal.

It is not disputed that in setting slopes the constructor is guided by the material to be removed in a cut, also that in an embankment

ordinarily, ordinary earth will hold a slope one foot vertical to one foot horizontal, while slopes for rocks or hard material are one quarter of a foot to one foot.

Plaintiff's witnesses testify that the slopes were drawn from one foot horizontal to one foot vertical, to one fourth horizontal, to one foot vertical, and that after the slope had been changed the material, less a small proportion, should have been classified as rock under the terms of the contract.

Two civil engineers employed by the railroad company are plaintiff's witnesses; also plaintiff's foreman, and the plaintiff himself.

On part of defendant the chief engineer testifies that he gave proper classification and estimate to the plaintiff; that he allowed him all yardage of solid rock to which he had a right. He states that there was solid rock, a regular ledge. As the work progressed there was softer material, of loose rock and earth, which could have been ploughed.

The assistant chief engineer testifies that he has examined the excavations on section 6, and found that the upper stratum was a hard chocolate-colored substance; "although not rock it will not disintegrate when exposed to the weather." It was of such a nature that blasting was necessary to remove it. This material was classed as solid rock; under it there was a layer of sand, and under the sand there was a bluish material of the nature of clay and soap stone. This material, the witness testified, is softer than the upper stratum, and was classified as loose rock. This testimony is corroborated by a third civil engineer, also by one of the defendants.

### The Committee of Experts.

L. N. Polk, W. M. Wasburn, and Linton W. Stubbs, civil engineers, report that they classified and examined the work done by the plaintiff on section 6 of the H. C., A. & N. R. R., and found "no other material than earth upon any portion of said section 6."

"They further state that at the remote date, from the time of the removal of the material upon said section 6, it is a difficult matter to determine accurately the class of material removed from the above mentioned section 6, though we are thoroughly satisfied that there never was any solid rock removed by said O'Donnell from said section 6, and further that we are of the opinion that the final estimate given said O'Donnell upon said section 6 was fair and liberal."

Witnesses for the defendant testify with reference to the slopes drawn from one foot horizontal to one foot vertical to one-fourth to one, and state that change may be made from the former to the latter without it being necessary to classify the material as solid rock.

We extract from the contract:

"With slopes for rock excavations of one-fourth horizontal to one vertical, and earth excavations with slopes of one foot horizontal to one foot vertical. But the width and slopes of the road, whether an embankment or cutting, or whether the material used be earth or rock, may be changed by the engineer."

There are several measurements of record.

In one the total yardage of the material classed as in the nature of sandstone is 4955 cubic yards; material classified as loose rock, 12,660 cubic yards; material classified as ordinary soil, 89,065 cubic yards; total, 106,680.

There are other measurements on the part of the defendant which differ slightly from the above.

The report of the committee of experts contains a statement of the yardage due.

The largest amount, supported by the committee's report, was taken by the District Judge as the basis of his judgment.

## ON THE MERITS.

Plaintiff, through counsel, contends that he received a promise from the chief engineer that he would classify his work as in solid rock at the point where the slopes were drawn in.

The classification was not made at once, but was necessarily postponed in accordance with the contract.

When it was made it was ascertained that there were three *strata* in the cuts. The proportion of each was established and the amount due on each classification fixed.

Without attempting to reconcile differences of statements of witnesses, we conclude on this point that if the engineer made the promise claimed at the time the ledge of solid rock was removed, it referred to the stratum which was afterward classified as rock, and not to ordinary soil and loose rock.

The evidence to establish the promise is not conclusive and does not come to us without serious contradiction.

The engineer states under oath: "I gave O'Donnell solid rock for

all material that would stand that classification." "The classification given him on the balance of the material was loose rock and earth. I gave this classification because that is what it was according to specifications after the slope stakes were drawn." "The hard material that I classified as solid rock did not continue down to the bottom of the cut or grade line."

The promise as made and the change in the slopes did not have the effect of modifying or amending the contract, which provides for the classification of material in cuts or embankments.

The contract between the plaintiff and defendant also stipulates that: "No extension of time or alteration of this contract is in any way to be considered or allowed, unless the same be in writing, signed by the parties and attached to the agreement."

The hasty utterances of the arbitrator during the progress of the work, without knowledge of the facts which shortly after became manifest, can not be construed as altering the conditions of such a contract.

His measurements and estimates were to be made after the completion of the work and were accordingly made.

*Measurement*: Witnesses for the plaintiff testify that there were strata in the cuts after the slope stakes were taken down; one a hard material, the other sand.

One of these witnesses states that the "stratum of sand did not amount to more than 10 or 15 per cent."

. The sample of the material brought up with the transcript are of three distinct strata. The estimate of 10 or 15 per cent. of earth to the remainder rock or loose rock made by one of plaintiff's witnesses is not sustained in opposition to the positive testimony of a number of witnesses.

The field notes of one of plaintiff's witnesses served as the basis of the calculation.

The experts appointed by the court report that the estimates made were fair and liberal.

All the witnesses of the defendant sustain the correctness of the aggregate allowed.

One of the number, an engineer, states: "I plotted the cross sections. I have these plotted cross sections with me." This survey "was made with a level rod and tape line, and the greatest care was taken to make it perfectly accurate. Plots marked from 1 to 9 are

the plots referred to by me. With the instrument referred to above I obtained the height and distance from the centre of points on the sides of the cut at top and bottom of each different stratum of material. The survey was accurate."

After weighing the evidence we are unable to conclude that the judgment is erroneous.

The defendants, in their motion in answer to the appeal, pray that the judgment be amended by reducing the amount decreed due.

We have before stated that defendants' witnesses have not entirely agreed in their estimate. We accept the highest, as did the District Judge, and affirm the judgment, at appellant's costs.