16 So.2d 483

**OIL FIELD SUPPLY & SCRAP MATERIAL CO. v. GIFFORD HILL & CO., Inc.**

No. 37047.

Dec. 13, 1943.

Rehearing Denied Jan. 3, 1944.

Stafford & Pitts, of Alexandria, for applicant.

Leo Gold, of Alexandria, for plaintiff and respondent.

HIGGINS, Justice.

The plaintiff instituted this action against the defendant to recover the sum of $584.80, alleged to be due for eight months rental at the rate of $73.10 per month on 731 feet of eight inch iron pipe, under a verbal agreement entered into on March 22, 1940, whereby the defendant also was granted a thirty-day option to purchase the pipe for $557.15, subject to a credit on the purchase price for the "amount of rental paid". The petitioner alleged that the defendant failed to avail itself of the right to purchase the property within thirty days and continued to use the pipe and refused to pay further rental. It prayed for a monied judgment for the rent, for recognition as the owner of the pipe, and for reservation of its right to sue for additional rentals as may accrue after the filing of this suit.

The defendant, in its answer, admitted the verbal agreement in all respects except that the option to purchase the pipe was limited to thirty days which was denied, and averred that it had the right under the option to purchase the pipe at any time during the month to month verbal lease agreement at the price' of $557.15, subject to a credit for all rental paid, and that after it' had paid seven months rental amounting to $511.70, it exercised its option to purchase the property and tendered the balance due on the purchase price of $45.45, which the plaintiff refused to accept. The defendant prayed that the plaintiff's demands be rejected at its costs and that its title to the pipe be recognized and confirmed.

The trial court entered judgment in favor of the plaintiff as prayed for, without assigning any written reasons. The defendant applied for a new trial on the ground of newly discovered evidence, which was said seriously affected the credibility of one of the plaintiff's witnesses, Amet DeSoto, a negro boy, who had been convicted of the crime of larceny and had been charged with larceny and other offenses in additional bills of information pending in the district court. It was contended that as the trial court had apparently decided the case in favor of the plaintiff by virtue of numerical superiority of witnesses, the defendant, under the circumstances, should be granted a new trial. The district judge refused to grant a new trial and the defendant appealed suspensively to the Court of Appeal of the Second Circuit, which court affirmed the judgment. The defendant applied for and was granted a rehearing. The Court of Appeal, in its opinion on rehearing, stated that as it had failed to state in its former opinion that the lower court had

awarded judgment in favor of the plaintiff as prayed for, the judgment was reinstated with that amendment and made the final judgment of that court. 16 So. 2d 77.

The defendant then applied to this Court for a writ of certiorari or review to the Court of Appeal, alleging that the trial court, and the Court of Appeal in the original and subsequent judgments, completely failed to pass upon certain points of law raised by it and presented in oral argument in the district court and in the Court of Appeal in both oral argument and in the briefs filed there. These same points of law are reiterated in both the application for the writ filed in this Court and in the defendant's brief filed in support of it, and are discussed also in the plaintiff's brief filed here.

■ The jurisprudence is clear and the attorney for the plaintiff concedes that where this Court grants a writ of certiorari or review to the Court of Appeal on a question of law, the whole case is then before us, as if it had been brought here by appeal. In recognition of this law, the respective attorneys of the parties to the suit have fully argued and briefed both the factual and legal questions presented.

Pretermitting a consideration of the legal issues raised, we observe that by the judgments of the lower and the appellate court the plaintiff is recognized as the owner of the pipe worth $557.15; that it has received in rent from the defendant the sum of $511.70; that it has been granted a monied judgment for the sum

of $584.80 with legal interest thereon from judicial demand; and that it has obtained recognition of its reservation of the right to sue for additional rent over a period of twenty months or the sum of $1462 and, therefore, would finally receive $2,-603.95 for rent on the pipe worth $557.15 and, at the same time, still be the owner of the pipe. The Court of Appeal noted that this was a harsh result but justified its conclusion on the ground that the defendant had bound itself to a severe agreement.

■ We know that a contract is the law between the parties and that they are bound by their agreements regardless of harmful consequences, provided the agreement is not contra bones mores or in violation of some prohibitory law. However, where the issue is as in the instant case —what are the terms of the verbal agreement—the fact that informed and experienced persons do not usually and customarily bind themselves to unjust and unreasonable obligations is a serious factor that must be taken into consideration in determining that question.

The plaintiff is a commercial · co-partnership composed of two partners both of whom testified that the option was limited to thirty days from the date of the verbal agreement of March 22, 1940. They sought to have their testimony corroborated by a negro yard boy, Amet DeSoto, who was formerly employed by them. DeSoto stated that·in a conversation in the yard between J. Howard Wilson, the manager of the defendant company, and J. H. Fuhrer, one of the partners of the

plaintiff, he overheard Fuhrer say that he would rent the pipe to the defendant for ten cents a foot per month and that "if he wanted to buy the pipe after thirty days he would let that thirty days rental go to the price of the pipe". However, Fuhrer and Wellin, co-partners of the commercial partnership, stated that the agreement was finally consummated in the office and that DeSoto was not present at that time. DeSoto admits that he continued to work in the yard where the initial discussion took place and did not go into the office where the agreement was made. Consequently, DeSoto, under his own admission as well as that of the two co-partners, was not in any position to testify what the ultimate terms of the agreement were.

J. Howard Wilson, the manager of the defendant corporation, an experienced executive, and J. B. Forsyth, the truck driver for the corporation, testified that neither DeSoto nor Wellin were present when the agreement was entered into between Wilson and Fuhrer and that Wilson stated that he would pay $73.10 rental a month for the use of the pipe provided his corporation would have the option to purchase the pipe at any time during the lease agreement and particularly if the rental paid equalled the purchase price of the pipe against which the rental paid was to be applied. Wilson states that the only reason he agreed to the high rental was because his company was granted the right at any time during the lease to convert the transaction into a sale by having the rental that was paid credited against the purchase price of $557.15, and that if

the option had been limited to thirty days, he would not have agreed to such terms.

The testimony of Wilson and Forsyth is borne out by seven checks on each of which is typed the following provision: "Rental charge on 731' of 8" pipe (listed on your invoice of March 22, 1940, in amount $557.15) at 10¢ per foot per agreement with our Mr. J. Howard Wilson." An eighth check for the sum of $45.45 bears the notation "In full, final and complete payment on 731' of 8" pipe (listed on your invoice of March, 1940, in amount $557.15) at 10¢ per foot per agreement with our Mr. J. Howard Wilson." The seven checks were accepted and cashed. The eighth or final check was not cashed but was retained by the plaintiff.

While the agreement between the parties was verbal, the plaintiff sent the defendant an invoice on one of its printed forms upon which was typewritten the following:

"March 22, 1940.
Gifford Hill Sand & Gravel Co.
Alexandria, La.

| | |
|---|---|
| 410 Ft. of 8 inch pipe @ 85¢ per ft. | $348.50 |
| 321 Ft. of 8 inch pipe @ 65¢ per ft. | 208.65 |
| | $557.15 |

Received by (Sgd.) J. B. Forsyth."

The co-partners, in their testimony, admitted sending this invoice to the defendant and it was also identified by Wilson. It will be noted that the invoice neither expressly nor impliedly in the slightest way indicates that the option was limited to thirty days. If the co-partners had agreed with Wilson that the option was limited to a thirty-day period there is no

good reason why that important provision should not have been placed in the invoice, particularly since it dealt with the optional sale feature of the agreement. Neither of the co-partners attempted in their testimony to assign any reason whatsoever why the alleged thirty day optional clause was omitted from the invoice.

It is said that if the co-partners intended to sell the pipe to the defendant on an installment or credit basis, they would have had a chattel mortgage executed for security and stipulated therein a reasonable rate of interest on the balance due. It appears that the defendant corporation enjoyed a good credit rating and promptly paid its bills and even the plaintiff has extended it credit on open account both before and subsequent to the present controversy. The co-partners admitted this to be true except that they stated the account is on a thirty day basis.

It was shown that there was little, if any, depreciation in the value of the pipe and that it was used on the defendant's property and thus the plaintiff was not incurring any unusual risk, especially since the defendant corporation was well able to pay at any time a bill for even more than $557.15, and plaintiff had either a lessor's or vendor's lien on the pipe for security.

As far as interest is concerned, the payments would run for a little over seven months and, therefore, only a small amount of interest at best would be involved.

Certainly, the above factors of chattel mortgage and interest are dwarfed when compared to the anomalous favorable result contended for by the plaintiff and allowed it by the other courts.

It is also significant that the plaintiff continued to retain the check for $45.45 and waited eight months after receiving it and being informed by Wilson that he considered the matter closed and that his company was the owner of the pipe, before filing this suit. In weighing the testimony, it must not be overlooked that Wilson and Forsyth are employees of the defendant and will not be financially responsible for the amount of any judgment rendered against the defendant corporation. On the other hand, the plaintiff is a co-partnership consisting of only two co-partners, Fuhrer and Wellin, who have, therefore, a direct interest in the result of this litigation.

Counsel for the plaintiff stresses the fact that Fuhrer testified that thirty days after the agreement was entered into, he telephoned Wilson and inquired if he was going to exercise the option to purchase the pipe as the plaintiff had an opportunity to sell it for cash to another party, and Wilson told him that he had not decided to do so, although he had further need or use of the pipe. Wilson testified that he recalled Fuhrer telephoning him about the matter, but that it was not clear in his mind whether it was thirty, sixty, or ninety days after the agreement was confected. It is argued that this circumstance shows that Wilson knew that the defendant had only a thirty-day option to purchase the pipe. As Fuhrer considered that the defendant had only a thirty-day option, which had expired, and knew that

the rental agreement was on a month to month basis, it is clear that he could have notified the defendant in writing that the plaintiff desired to put an end to the lease because it did not wish to further continue it. R.C.C. Art. 2686. The plaintiff then could have been free to sell the pipe for cash as Fuhrer said he desired to do. The plaintiff did not so notify the defendant then nor at any other time, thus throwing doubt on Fuhrer's and Wellin's statements that the option was for thirty days only. The reason why plaintiff could not have legally terminated the lease through written notice was because Wilson remained confident in his position by insisting that the optional clause of the agreement was not limited to thirty days. For six months after the conversation between Fuhrer and Wilson the plaintiff continued to accept the rental payments of $73.10 per month without any protest that the rental payments were to be strictly considered as rental payments and were not to be credited on account of the purchase price of the pipe because the option had expired.

After carefully weighing and considering the testimony and evidence in this case, it is our opinion that the judgments of the district court and the Court of Appeal are manifestly erroneous in holding that the option to purchase was limited to thirty days and therefore defendant attempted to exercise the option too late.

For the reasons assigned, it is ordered, adjudged and decreed that there be judgment in favor of Gifford Hill & Company, Inc., the defendant herein, and against

Oil Field Supply & Scrap Material Company, the plaintiff, annulling the judgments of the district court and the Circuit Court of Appeal, dismissing the suit, and recognizing the defendant as the owner of the pipe in question upon the payment to the plaintiff of the balance of $45.45 due on the purchase price thereof.

It is further ordered that the plaintiff return to the defendant the 731 feet of 8-inch pipe purchased by the defendant from the plaintiff; the costs of all courts are to be borne by the plaintiff.

FOURNET, J., absent.

HAMITER, J., recused.