165 So.2d 1

**NATIONAL CRANKSHAFT COMPANY**

v.

**NATURAL GAS INDUSTRIES, INC., James
H. Hoag, Liquidator, and James H.
Hoag, Individually, in Solido.**

No. 47035.

June 8, 1964.

Coen & Pliner, by Eugene J. Coen,
Shreveport, for plaintiff-appellant.

Phillips, Risinger & Kennedy, by Marlin Risinger, Jr., Shreveport, for respondents.

HAWTHORNE, Justice.

National Crankshaft Company instituted this suit against Natural Gas Industries, Inc., James H. Hoag, Liquidator, and James H. Hoag, individually, in solido, seeking judgment for $923.18, the purchase price of a crankshaft alleged to have been sold and delivered to Natural Gas Industries. The defendants deny that this crankshaft was purchased from the plaintiff and averred that it was purchased from a different company, National Welding & Grinding Company, with which they had a 25 per cent discount arrangement and which owed them an adjustment for work previously done. The Court of Appeal, Second Circuit, affirmed a judgment of the city court of Shreveport rejecting plaintiff's demand, 158 So.2d 370, and plaintiff's application for writ of review was granted by this court.

John N. Brantley, superintendent of the defendant Natural Gas Industries, by a telephone call from Tatem, Texas, on January 11, 1962, placed an order for a crankshaft, with instructions that it be shipped to Olla, Louisiana. He called the listed telephone number of National Welding & Grinding Company in Dallas, Texas, and assumed that he was speaking to John H. Hudson, sales engineer of National Welding. Mr. Hudson, however, denied that he had received the call or that National Welding & Grinding Company had sold the defendant the crankshaft; he stated that the defendant corporation did not owe National Welding any sum whatever for the crankshaft, and that his company and the plaintiff National Crankshaft Company are separate corporations. The general manager of the plaintiff National Crankshaft testified that the telephone order was placed with him, and explained that the call was transferred to him because National Welding was in the business of repairing crankshafts but not of selling them.

In due course the crankshaft was received and accepted by defendant at Olla, Louisiana. The crankshaft was shipped via Braswell Freight Lines and was accompanied by a freight bill to which was attached a duplicate invoice of National Crankshaft. The freight bill disclosed that the shipper was the plaintiff National Crankshaft, and the invoice which accompanied the freight bill showed this company to be the seller. According to the testimony, the freight receipt was signed by an employee of the defendant Natural Gas, and the invoice was delivered to him at the time of the delivery of the crankshaft. Mr. Brantley, superintendent of defendant Natural Gas Industries, admitted receiving the invoice, which passed over his desk, and admitted noticing that it was from National Crankshaft, but said that he refused to approve it for payment because his company was not allowed a 25 per cent discount.

On May 25, 1962, plaintiff wrote the defendant Natural Gas that its account of $923.18 was more than 90 days past due. Again on June 28 plaintiff advised defendant that its previous letter concerning the past due account had gone unanswered, and demanded payment or satisfactory arrangements within 10 days of receipt of this last letter.

Defendants admit the receipt of the crankshaft, and testified that it had been incorporated into their machinery and was actually in use at the time the case was tried below.

As stated by the Court of Appeal, how the mixup occurred in receiving and handling the order is not satisfactorily explained by the record; but the evidence is convincing that the defendant Natural Gas intended to place the order with National Welding and Grinding and believed that it had done so, and is equally convincing that the order was actually filled by National Crankshaft, a company with which the defendant had no intention of contracting.

■■■ The Court of Appeal was correct, under the authorities cited in its opinion, in holding that plaintiff could not recover on the basis of the telephone order of January 11, 1962; but that court failed to recognize that under the circumstances of this case there was liability on the part of the defendant under the doctrine of quasi-contract—that is, a promise to pay implied from keeping the goods after notice. 1 Williston on Contracts, 3rd ed., sec. 80, pp. 264–265; 5 Williston on Contracts, rev'd ed., sec. 1575, p. 4404; Barnes v. Shoemaker, 112 Ind. 512, 14 N.E. 367; to the same effect, La.Civ.Code Arts. 2293, 2294; see Planiol, Treatise on the Civil Law (La. State Law Institute tr.), V. 2 pt. 1, nos. 810A et seq., pp. 432 et seq. We consider that the following quotation from Williston states the law applicable here:

■■ "* * * if after an offer is made to one person only, performance is tendered by another, though the offeror may refuse the tendered performance, yet if he does receive performance knowing that it is not tendered by or on behalf of the offeree, he will be bound. * * *" 1 Williston, supra.[1]

■■ In the instant case when the crankshaft was delivered with the accompanying invoice clearly indicating that plaintiff National Crankshaft, and not National Welding, was filling the order—an invoice which was received by an employee of the defendant and seen and noted by the defendant's superintendent—, defendant had the choice either of accepting the goods,

1. Although plaintiff's suit is based on the contract of sale of January 11, under the authority of Article 2164 of the Code of Civil Procedure the appellate court may render any judgment which is just, legal, and proper on the record on appeal.

thereby implying a promise to pay and establishing a quasi-contractual relationship, or of refusing them under the theory that it had no contract with the plaintiff. Rather than refusing the crankshaft, the defendant incorporated it into its machinery, and it was actually being used, as already stated, at the time of the trial.

For the reasons assigned the judgment of the Court of Appeal is annulled and set aside, and it is now ordered that there be judgment in favor of plaintiff, National Crankshaft Company, and against the defendants, Natural Gas Industries, Inc., James H. Hoag, Liquidator, and James H. Hoag, individually, in solido, for $923.18 with 5 per cent per annum interest thereon from judicial demand until paid. All costs are to be paid by the defendants.

165 So.2d 3