216 So.2d 549 (1968)
J. H. JENKINS CONTRACTOR, INC.
v.
CITY OF DENHAM SPRINGS.
No. 7487.
Court of Appeal of Louisiana, First Circuit.
December 16, 1968.
Nesom & Mellon, Denham Springs, for appellant.
Sanders, Miller, Downing & Kean, Baton Rouge, for appellee.
Before LANDRY, REID and SARTAIN, JJ.
LANDRY, Judge.
This action by plaintiff, J. H. Jenkins Contractor, Inc. (Jenkins) against defendant, City of Denham Springs (City), is to recover under contract, and alternatively *550 quantum meruit, the sum of $38,763.64, allegedly due as the difference between the total value of work performed aggregating $110,529.84, and the sum of $71,766.00 actually paid by the City to Jenkins. The contract in question called for the construction of an oxidation pond consisting of eight separate items collectively constituting an accessory to a comprehensive sewerage and drainage project undertaken by the City. From the judgment of the trial court in favor of Jenkins in the sum of $30,210.26, the City has appealed. We find no error in the ruling of the trial court and affirm same.
There is little or no dispute concerning the facts attending this litigation. The City concedes all work was fully and properly performed. The single issue on appeal involves a difference in meaning of the contract terms providing for the manner of payment for dirt moved by Jenkins in the course of constructing the oxidation pond and its appurtenances.
The agreement in question encompasses the clearing and grubbing of 120 acres of land to be ponded. It also calls for the laying of certain pipe, construction of fencing, seeding and fertilizing the pond area, digging a "core ditch", erecting a gate and building approximately 9000 linear feet of containing levee fifty feet wide at the bottom, eight feet wide at the top and of an average elevation of five and one-half feet.
The contract calls for the pond area to be completely cleared of trees, stumps, grass and brush. It also provides that the pond be dug to a uniform depth of 33 feet above sea level, allowing for a plus or minus deviation of not more than one-half foot. The areas above the desired floor level were to be excavated to the depth indicated and the unearthed material utilized to construct the levee and fill the below grade areas of the pond to specification grade. The levee fill was to be deposited in six inch layers and compacted by running the contractor's heavy equipment back and forth over the loose dirt. It is conceded that loose excavated material possesses a shrinkage factor which is directly related to the degree of earth density. This means, the record shows, that a yard of loose excavated material taken from one area may be less dense and therefore not provide as much compacted fill as an equal amount of loose fill excavated from an area of greater soil density. It is also conceded that all earth possesses a shrinkage factor, consequently, to obtain a given quantity of compacted fill, a larger amount of loose excavation material is required.
The controversy herein concerns the foregoing phenomena. Item 2 of subject bid form calls for "74,000 c. y. fill for levee, Seventy-four cents $0.74, $54,760". However, neither the contract nor specifications recite whether the estimated cubic yardage contemplated is to be measured in terms of loose fill excavated, or compacted yardage in the levee proper. Needless to state, plaintiff contends the former measure applies whereas defendant urges the latter. Defendant maintains that since the matter is in dispute, the interpretation of its engineer, J. C. Kerstens, is controlling considering the agreement expressly provides that any controversy regarding contract terms shall be resolved by the engineer whose conclusion shall be binding. Alternatively, defendant maintains that according to the explicit terms of the agreement, no quantity of earth moved in excess of the estimated 74,000 yards could be paid for without a written change order having issued prior to movement of such surplus.
The evidence discloses the excavation contemplated was divided into three phases. First, achieving the desired level of the pond and elevation of the surrounding levee. Secondly, the digging of a core ditch which was in effect an extension of the levee. Thirdly, some unspecified earth moving outside the pond area. Defendant's engineer estimated the quantity of earth to be dug from the pond area at 74,000 cubic yards and plaintiff's bid of 74 cents per cubic yard for pond excavation, core *551 ditch and outside digging was the low bid. It is conceded plaintiff is entitled to payment for 3,288 yards excavated in construction of the core ditch and 2,359 yards for excavation outside the pond area, all at $.74 per cubic yard. It is further admitted plaintiff is entitled to $80.00 for constructing a gate. Plaintiff maintains, however, that to construct the levee and level the pond floor, he was required to excavate 109,716 cubic yards for which he should be paid at the rate of $.74 per unit. According to plaintiff, defendant owes the sum of $110,529.84, less credit for payments aggregating $71,766.00, leaving a balance due of $38,763.84. Defendant maintains plaintiff is entitled to payment for pond excavation only to the extent of the 74,000 yards estimated, and for the ditch, outside digging and gate, on which basis it concedes owing plaintiff a balance of $12,414.00.
J. H. Jenkins, Sr. and Jr. (the latter a Civil Engineer) in effect testified they had been engaged as dirt contractors for quite some time. They also stated that when earth moving jobs are contracted in the manner employed in the case at hand, that is, on a unit price basis with an estimated number of units called for, it is customary in the trade that the unit price bid is to be paid on loose excavation measurements unless the contract expressly provides otherwise. They testified further that if compacted measurement is intended, it is specifically so indicated in the contract plans or specifications. In addition both stated that in relying upon this presumption, they assumed they would be paid bid unit price per loose yard excavated regardless of the number of yards ultimately dug. The Jenkins further stated that as the job progressed it became evident the estimated yardage would be exceeded and they made it clear to defendant's engineer, Kerstens, that they expected to be paid for the surplus dirt excavated. The Jenkins concede Kerstens never gave them a definite response. They stated, however, Kerstens' reply indicated he would make adjustments in the work procedure to insure that the estimate of 74,000 yards would not be exceeded and impliedly led them to believe additional work would be paid for at bid price.
Defendant's agent, J. C. Kerstens, Civil Engineer, testified he personally drafted the contract plans and specifications. He concedes that the contract does not state the method of measurement of yardage but contends that inasmuch as the specifications indicate compaction of the levee fill, this is to be taken as an indication of compacted measurement. Mr. Kerstens acknowledged that cross sections of the pond area taken before commencement and upon completion of the project reveal a total of 92,421 yards excavated. He further testified, however, that irrespective of the amount of pond excavation, plaintiff is entitled to payment only for 74,000 yards of compacted levee fill at the unit price of $0.74. He further contends plaintiff is not entitled to be paid for excavation required to level the pond floor as this was not specifically mentioned as a "pay item" in the specifications. He acknowledged, however, that a uniform pond floor would greatly aid the oxidation process.
Edward E. Evans, Consultant Civil Engineer, testifying on behalf of plaintiff, computed total pond excavation of 92,402 yards to reduce "high spots" and an additional 10,143 yards moved to raise formerly "low" areas to the desired grade. In Evans' professional opinion, when earth moving contracts are let on a unit basis, as was done herein, it is customary and virtually mandatory that the method of measurement be specified in the contract provisions. He also testified that in contracts of this nature quantities are loose measured unless otherwise expressly indicated. He explained the underlying reason to be that due to shrinkage and other factors encountered in construction, the engineer's estimation of compacted units in the project (the levee) is only an approximate measure, meaning the compacted measure stated is only an indication of the quantity of loose material contained therein. Evans also stated that *552 in contracts of this nature it is customary to determine total yardage by cross-sectioning the excavation area before construction starts and upon completion of the project. Evans also stated that in instances of this nature it is customary not to obtain change orders for overruns of quantity but rather reflect such surplus in the engineer's final estimate of units performed. He elucidated that it is impossible to tell in advance what exact additional quantity will be required consequently the better practice is to wait until the job is completed and reflect either an overrun or underrun in the engineer's final estimate. Finally, he testified that subject contract is the first and only unit price agreement which failed to specify the method of yardage measurement. He agreed with Kerstens that a uniformly level pond floor would aid in the oxidation process.
Plaintiff produced Ross Cox and Frank Sullivan, both experienced dirt moving contractors, and each of whom had been an unsuccessful bidder on the subject work. They testified in substance that when they bid on this contract as a unit price job, they expected to be paid the quoted unit price for each loose yard of excavation as the contract was silent on method of measurement and did not expressly recite measurement would be on a compacted yard basis. They further stated that contract provisions to the contrary notwithstanding, it was never the custom in the industry to obtain written change orders before exceeding estimated yardage.
Defendant offered the deposition of Mr. Sidney L. Zeid, a graduate Civil Engineer, who stated in substance that in contracts of this nature, he ordinarily employed a lump sum contract form for construction of the entire pond as he sometimes found unit prices "cumbersome and inconvenient" in this particular type of construction. He also stated it is customary, in the field of sanitation engineering, to pay for material in place, meaning employment of embankment or compaction measurement "with an allowance factor for shrinkage and sometimes not." Conceding the contract did not specify method of measurement, Mr. Zeid was of the opinion the only practical way to measure quantity was by ascertaining the in place amount of dirt compacted into the levee on completion. He explained that this appeared to be the only logical solution inasmuch as the contract provided for placing the dirt in the levee in six-inch layers which could not be practically measured prior to compaction. Mr. Zeid acknowledged that the contract called for payment on a unit price basis rather than lump sum and also that the pond would operate more efficiently if variation in bottom grade were held to a tolerance of three inches. It was Mr. Zeid's further opinion that in a unit price contract, provision is usually made for obtaining a change order when estimated quantities are exceeded by 10 or 15%.
The contract clause relied upon by defendant as making the engineer Kerstens the final arbiter of the dispute reads in full as follows:
"The architect/engineer shall give all orders and directions contemplated under this contract and specifications relative to the execution of the work. The architect/engineer shall determine the amount, quality, acceptability, and fitness of the several kinds of work and materials which are to be paid for under this contract and shall decide all questions which may arise in relation to said work and the construction thereof. The architect/engineer's estimates and decisions shall be final and conclusive, except as here and otherwise expressly provided. In case any question shall arise between the parties hereto relative to said contract or specifications, the determination or decision of the architect/engineer shall be a condition precedent to the right of the contractor to receive any money or payment for work under this contract affected in any manner or to any extent by such question.

*553 "The architect/engineer shall decide the meaning and intent of any portion of the specifications and of plans or drawings where the same may be found obscure or be in dispute. Any differences or conflicts in regard to their work which may arise between the contractor under this contract and other contractors performing work for the owner shall be adjusted and determined by the architect/engineer."
Based on the cited provisions, defendant urges applicability of LSA-C.C. Articles 1945 and 1963, the former of which pronounces the rule that contracts have the legal effect of law between the parties while the latter provides that when the intent of the parties is clear and lawful, they are bound thereby, irrespective of the result, unless the terms are reprobated by law. In support of said contention, defendant also cites and relies upon Mente & Company v. Roane Sugars, Inc., 199 La. 686, 6 So.2d 731; Muse v. Metropolitan Life Insurance Company, 193 La. 605, 192 So. 72, 125 A.L.R. 1075; American Cotton Co-operative Association v. New Orleans & Vicksburg Packet Company, 180 La. 836, 157 So. 733; Oil Field Supply & Scrap Material Company v. Gifford Hill & Company, 204 La. 929, 16 So.2d 483, and Reconstruction Finance Corporation v. Mickelberry, 189 La. 105, 179 So. 49.
Plaintiff, however, argues that our rules of contract interpretation are settled to the effect that notwithstanding a contractual provision giving an engineer authority to settle disputes respecting meaning and intent of terms, legal disputes between contracting parties are determinable by the courts. In this respect it is contended the failure to specify a method of measurement presents a legal issue for determination, a question therefore justiciable. Authorities cited for the proposition are: Fritz Jahncke, Inc. v. Fidelity and Deposit Co., 166 La. 593, 117 So. 729; C. G. Kershaw Contracting Co. v. City of Crowley, La.App., 149 So. 181; O'Donnell v. Henry Forrest and Co., 44 La.Ann. 845, 11 So. 245; Ferrand v. Van Benthuysen, 2 La.App. 8, and Dugue v. Levy, 114 La. 21, 37 So. 995.
We find neither defendant nor plaintiff has correctly stated the law applicable to the case at hand. The pertinent rule, rather, as declared in the Jahncke case, supra, is to the effect that a contract clause providing the architect or engineer shall be the final arbiter of disputes is binding upon the parties unless the architect or engineer's decision is manifestly arbitrary or rendered in bad faith. In the Jahncke case we find the following clear and positive pronouncement:
"An architect is a person skilled in the art of building, is the recognized head of the building trade, and is supposed to be skilled in the art of planning and designing structures of every description. 2 Am. & Eng.Ency. of Law, p. 815.
Where, therefore, the parties have agreed to abide by the decision of an architect, the courts will hesitate, in the interpretation of the contract, to set aside the architect's ruling, unless manifestly arbitrary, or is shown to have been rendered in bad faith.
In 6 Ruling Case Law, p. 957, it is stated that:
`In construction contracts the parties frequently insert stipulations to the effect that the completion, sufficiency, classification or amount of the work done by the contractor shall be determined by the architect. * * *
`By such stipulation the parties constitute the architect * * * an arbitrator, and the provision is held, if anything, more binding than an ordinary submission, for the reason that it enters into and becomes a part of the consideration of the contract, without which it would not in all probability have been made.'
The same rule is laid down in 9 Corpus Juris, p. 772.

*554 In O'Donnell v. Henry Forrest & Co., 44 La.Ann. 845, 11 So. 245, the court said:
`The plaintiff and the defendants having agreed in case of disputes or differences as to the construction of their contract, or the sufficiency of the performance of any of the work to be done under it, or the price to be paid, to submit them to the civil engineer in charge, who was to consider and finally decide them, are bound by the measurements made, and by the decision of the selected arbiter.'
In the case of Dugue v. Levy, 114 La. [21] 31, 37 So. [995] 999, the court found that the plaintiff had in some way incurred the displeasure of the supervising architect, and that the latter was disposed to be overexacting with him, and said:
`A strong case must be made out, to induce the courts to overrule the decisions of the supervising architect, but this case is of that character.'
In the case of Shea v. [Sewerage &] Water Board, 124 La. [299] 333, 50 So. [166] 177, in construing a contract which provided that the general superintendent of the defendant board shall finally decide all matters of dispute involving the character of the work, its quantity, and the compensation therefor, the court said that:
`The authorities hereinabove quoted show that such a clause as this in a contract is binding, and that a decision under it is conclusive, in the absence of a showing that it was made in fraud or bad faith; and the plaintiff has not made such a showing.'
This holding seems to be in line with the federal jurisprudence."
Oil Field Supply & Scrap Material Company v. Gifford Hill & Co., and other related authorities, supra, cited and relied upon by defendant, are inapposite because they do not involve interpretation of vague and uncertain contract terms but rather the basic nature of clear and express provisions.
Considering the circumstances attending the instant matter, we find Kerstens' determination falls within the self-contained exception to the rule that when an engineer or architect's decision is made controlling by the contracting parties in the event of dispute, such decision must stand unless the arbiter be shown to have been manifestly arbitrary or in bad faith.
In this connection it must be recalled that defendant through its agent, Kerstens, chose the contract language which failed to specify the manner of measurement which circumstance is the root of the difficulty. While this factor, standing alone, is not sufficient to decide the matter in plaintiff's favor, nevertheless, viewed in conjunction with the remaining circumstances, impels the conclusion Kerstens' decision was manifestly arbitrary and must therefore be set aside. We note as did the trial court, the evidence preponderates to the effect it is customary that measurement in these cases be computed on loose excavation quantities unless otherwise expressly so stated in the contract. Moreover, it is clear that Kerstens at least tacitly led plaintiff to believe that the extra work would be paid for at the unit price bid. Additionally, it appears Kerstens required considerable pond excavation designed solely to achieve the highly desirable uniformity of floor level. Finally, Kerstens' interpretation would produce an unconscionable effect by requiring plaintiff to exceed defendant's own estimate by approximately 25% without remuneration therefor. Admittedly, one who knowingly and voluntarily assents to harsh contractual provisions may not on that account alone be relieved from the effects thereof. LSA-C.C. Articles 1945 and 1963. However, where the issue is the meaning and intent of a contract term, the fact that an informed and experienced person does not usually and customarily bind himself to unjust and unreasonable obligations, *555 is a serious factor that must be considered in determining such an issue. Oil Field Supply & Scrap Material Company v. Gifford Hill & Co., 204 La. 929, 16 So.2d 483.
In our judgment, plaintiff is also entitled to recovery on the theory of quantum meruit. This remedy, recognized in our courts since 1820, see Gilly v. Henry, 8 Mart.(O.S.) 402, insures enforcement of the obligation to pay the reasonable value of services rendered in the absence of express agreement. See 18 Louisiana Law Review, 209, and authorities therein cited. The rule is expressed as follows in Duggan Machine Co. v. Consolidated Well Servicing Co., La.App., 187 So.2d 124:
"The doctrine of quasi contract and quantum meruit are found in Articles 1816, 2293 and 2294 of the Louisiana Revised Civil Code and have always been recognized by the courts of this state. Under these doctrines a person can, by his inaction and acceptance of the benefits of another's labor, obligate himself to pay the reasonable value of the other's labor. In the case at bar when defendant delivered the mud pump, accepted the repairs made by plaintiff, and benefited from these repairs by putting the equipment in use, defendant became obligated to pay the cost of the repairs. National Crankshaft Company v. Natural Gas Industries, Inc., 246 La. 395, 165 So. 2d 1 (1964), and cases cited therein."
In the instant case defendant bound itself by the terms of a contract which expressed a stipulated number of cubic yards of earth at a stated contract price. Plaintiff was nevertheless required to perform work considerably in excess of the amount specified, Kerstens knowing full well plaintiff expected to be paid for the surplus. Under the circumstances the project engineer was authorized to obligate his principal to pay the reasonable cost thereof and the city became bound by his implied agreement to do so. National Crankshaft Company v. Natural Gas Industries, Inc., 246 La. 395, 165 So.2d 1; Brooks v. Britnell, La.App., 183 So.2d 434.
We are also in accord with the trial court computing plaintiff's recovery on Evans' calculation that a total of 92,402 cubic yards were excavated from the pond area inasmuch as this accords substantially with Kerstens' estimate of 92,421 cubic yards. Considering the other elements of plaintiff's claim are not in dispute, the judgment of the trial court is affirmed at appellant's cost.
Affirmed.