338 So.2d 141 (1976)
Thomas R. Terral, Jr. d/b/a Omega Engineering, Plaintiff-Appellee,
v.
Oscar BEARDEN, Defendant-Appellant.
No. 12999.
Court of Appeal of Louisiana, Second Circuit.
September 27, 1976.
*142 Kidd, Katz & Strickler by Paul H. Kidd, Monroe, for defendant-appellant.
Baker, Culpepper & Brunson, Jonesboro by Joseph A. Cusimano, Jr., Farmerville, for plaintiff-appellee.
Before HALL, MARVIN and JONES, JJ.
MARVIN, Judge.
Defendant appeals from a judgment awarded plaintiff under quantum meruit for a survey made in 1974 by plaintiff on verbal orders of defendant. Defendant contends the trial court erred because plaintiff brought suit on the oral contract and did not alternatively seek recovery under quantum meruit, contrary to the holding of Edington Drilling Company v. Yearwood, 239 La. 303, 118 So.2d 419 (1960).
The survey of defendant's lands arose out of three telephone conversations between the parties litigant. Plaintiff contends he quoted defendant hourly prices of $15 for preparatory (office) work and $21 for field work, assuming that the lands were in one tract and had an established corner on which to base the survey, and estimating that it would take two and one-half days to do the job.
Defendant admits he directed plaintiff to make the survey, but only after plaintiff "guaranteed" to do the work for a fixed price figured on the basis of two and onehalf days at $156 per day, or $390.[1]
As it turned out, defendant's property was not one tract, but two separate tracts, one of twenty acres and the other of eight acres. The terrain of the properties was not uniform or even and there was no established corner. Plaintiff and his crew spent four and one-half hours in preparation work and 63 hours in the field. Plaintiff and his crew worked one and one-half or two days traversing rough terrain and cutting through thickets to reach one of defendant's corners from an established corner some two thousand feet away. Defendant's tracts were in an isolated area. The survey began on Friday, August 23, and was completed on Thursday, August 29, at which time plaintiff telephoned defendant about the completion. On Wednesday, August 28, defendant walked around the surveyed lines with one of plaintiff's crew. Almost 10,000 linear feet were surveyed and staked. The lower court also considered plaintiff's expenses for stakes, measuring tape and general overhead, in approving as reasonable the hourly rates mentioned.
Plaintiff testified that when he obtained a copy of defendant's deed and learned there were two tracts involved, he informed defendant that it was going to take longer than two and one-half days to make the survey. Plaintiff said defendant responded by telling him to proceed with the survey and to report his progress to defendant on a daily basis.
The defendant admitted he learned from plaintiff that his property was in two tracts; that he heard from the plaintiff after the survey started and before the surveyors reached defendant's corner; that defendant knew the survey started on a Friday (August 23) and that defendant walked the lines on the following Wednesday (August 28). Defendant admits receiving telephone calls from plaintiff on the nights of Saturday (August 24), Sunday (August 25), Monday (August 26), and Tuesday (August 27) about the progress of the survey team. Defendant also admits knowing on Wednesday (August 28) how many days the surveyor had been working.
The lower court said:
". . . [I]t is understandable that, based upon preliminary discussions and *143 the hypothetical situation posed by plaintiff, defendant might justifiably have assumed that the surveying work would take no longer than 2½ days. However, if this was his understanding, it defies logic that he did not raise this issue when informed that plaintiff's crew took two full days just to reach a corner on defendant's property from which they could run his lines." Opinion, p. 3.
The lower court noted plaintiff's testimony that he told defendant before the survey was begun ". . .in surveying you can't contract [at a fixed price] because it depends on what kind of terrain you run into and how far you have to run and everything else." (Material in brackets supplied). The defendant was or should have been aware that the two and one-half days mentioned was only an estimate and that he was going to be charged on the basis of how long it would take for the survey to be completed. It is not shown that time was of the essence to defendant for the survey to be completed and we can only conclude that the two and one-half days was interjected into the parties negotiations merely as an estimate. As the survey progressed, defendant became aware by telephone and visual inspection that it was taking longer than two and one-half days.
The trial court concluded there was "no meeting of the minds . . . as to the total cost of the survey . . ." We do not dispute this conclusion because the surveying was not yet begun. We find, however, that before the work began, there was a meeting of the minds that the total cost would be computed on a time or hourly basis after the survey was completed unless defendant ordered the surveyors to cease working before completion. Otherwise, there would have been no necessity for the nightly telephone calls from plaintiff to defendant.
Even assuming arguendo, that there was no meeting of the minds on the hourly rate or rates to be charged does not avail defendant. Here, the plaintiff staked at 100 foot intervals the boundaries of defendant's two tracts and defendant, with knowledge of plaintiff's efforts, has benefited thereby. The circumstances here are appropriate for application of the doctrines of quasi contract and quantum meruit notwithstanding the absence of a plea therefor. In this respect defendant relies on Edington Drilling Company, cited supra (1960), and Josey v. Howard Lbr. & Supply Company, 232 So.2d 119 (La.App. 2d Cir. 1970).
Other cases which should be considered are National Crankshaft Co. v. Natural Gas Industries, Inc., 246 La. 395, 165 So.2d 1 (1964); Brooks v. Britnell, 183 So.2d 434 (La.App. 2d Cir. 1966); and Duggan Machine Co. v. Consolidated Well Servicing Co., Inc., 187 So.2d 124 (La.App. 2d Cir. 1966).
Edington arose before the Code of Civil Procedure became effective. It said:
"This plea cannot be granted because plaintiff seeks recovery only under its contract and not on a quantum meruit basis. The law is well settled that, when a plaintiff sues on a contract which is shown to have been breached by him, recovery may not be had in that action on a quantum meruit . . ., unless he has pleaded for such relief in the alternative." 118 So.2d 422. (citations omitted). Next came National Crankshaft in 1964. It said:
"[1]Although plaintiff's suit is based on the contract of sale of January 11, under the authority of Article 2164 of the Code of Civil Procedure the appellate court may render any judgment which is just, legal, and proper on the record on appeal." 165 So.2d 3, footnote 1.
Brooks and Duggan Machine Co., by this court in 1966, said:
"Under the provisions of the Louisiana Code of Civil Procedure an appellate court may grant relief on the basis of quantum meruit under a quasi contractual theory although such relief is not prayed for in an alternative demand. LSA-C.C.P. 2164; National Crankshaft Company v. Natural Gas Industries, Inc., supra; Brooks v. Britnell, La.App., 183 So.2d 434 (2nd Cir. 1966)." 187 So.2d 126. See also 183 So.2d 435.
*144 Josey, by this court; in 1970, obviously overlooked the authority of Brooks and Duggan, as well as of National Crankshaft, which were decided since the advent of the Code of Civil Procedure, and relied solely upon the statement in Edington in 1960. Josey also did not mention the Edington requirement that before quantum meruit recovery can be allowed a plaintiff, the plea must be made in the alternative when the contract is shown to have been breached by the plaintiff. Josey said:
"Plaintiff has sued solely under allegations of contract and has not asked for recovery on a quantum meruit basis in the alternative. We, therefore, cannot grant him any relief under this theory of law. B. F. Edington Drilling Co. v. Yearwood, 239 La. 303, 118 So.2d 419." 232 So.2d 122.
Each of these cases of course, must stand on its peculiar facts and we see no need to detail the factual distinctions between them. Instead, we turn to more recent judicial pronouncements which call for scrutiny of reasons underlying procedural bars imposed either by the Code or by cases, before the bar is applied.
The reason for not allowing recovery in quantum meruit when suit is brought on a contract and no alternative plea is made, is to avoid surprise and resulting injustice to the defendant. The same reason exists in the code requirements that special damages be "specifically alleged" (C.C.P. Art. 861) and that affirmative defenses shall be "set forth affirmatively" (C.C.P. Art. 1005). See Paxton v. Ballard, 289 So.2d 85 (La. 1974) and Townsend v. Cleve Heyl Chevrolet, 318 So.2d 618 (La.App. 2d Cir. 1975). In Paxton, the procedural bar was lifted because the adverse party was timely given "fair notice" by factual pleadings of what the other party was seeking, although the pleading was technically deficient when weighed against the Codal authority. In Paxton, the defendant failed to plead contributory negligence as a bar to recovery. In Townsend, the "fail notice" doctrine of Paxton was extended to cover special damages under La.C.C.P. Art. 861. In both instances, the test applied was whether the adverse party had "fair notice" by the factual pleadings of what the other party was contending and was not "surprised" so as to create an injustice. Where this question is affirmatively answered, the procedural bar because of technically deficient pleadings is not applied. These principles are appropriate here.
In the instant case, defendant was sent an itemized statement before suit was filed showing the hours worked and the respective hourly rates. Plaintiff's petition alleged the same information and a copy of the itemized statement was attached. Defendant attempted to negotiate with plaintiff's attorney after suit was filed and was generally informed by this attorney of plaintiff's contentions as to the hours and the rates. Defendant was afforded ample time to contest the reasonableness of both the hours and the hourly rates on which plaintiff was basing his case. Defendant did not, but could have asked for a continuance to obtain evidence to rebut plaintiff's testimony regarding the basis of the hours and the rates (C.C.P. Art. 1154).
Plaintiff expressly alleged in his petition that the itemization submitted to defendant ". . . represents a fair and reasonable charge for services rendered in view of the skill and time involved and plaintiff is entitled to recover same from defendant." The reasonableness of plaintiff's charges and the amount of time involved were put at issue by this allegation and it was not necessary for plaintiff to plead quantum meruit in the alternative. Under this allegation plaintiff was required to prove the reasonableness and fairness of the time and the charges. Plaintiff did this to the lower court's satisfaction. We hold therefore that defendant was timely given "fair notice" of plaintiff's contentions and was not taken by surprise so as to cause him an injustice.
Article 862 of the Louisiana Code of Civil Procedure further supports the right of the trial court to grant the relief to which the plaintiff is entitled. The Article provides:

*145 "Except as provided in Article 1703, a final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings and the latter contained no prayer for general and equitable relief."
It is not shown that plaintiff in any way breached any agreement with defendant, an additional reason why Edington does not control. To the extent that the statement quoted from Josey is contrary to our holding herein it is overruled.
At appellant's cost, judgment is
AFFIRMED.
NOTES
[1] The trial court cogently observed: ". . . [H]ow the figure of $156.00 per day was arrived at was never explained, since this would evolve an uneven hourly rate."