CHEHARDY, Judge.
Calvin A. Diaz, Sr., doing business as Diaz Cartage Company, instituted this action against Edward Levy Metals, Inc., for the balance of $2,727.97 due for trucking service provided defendant during the period of April 17,1976 through April 27,1976 and for damages of $905.50 sustained by one of plaintiff’s trailers.
The trial court dismissed plaintiff’s suit at his cost, without issuing written reasons, and plaintiff appeals.
The plaintiff and the defendant had been doing business on a job-to-job basis since 1969. Although there had never been any written contracts between the two parties, it had been orally agreed that the plaintiff would provide trucks on a basis of $20.70 per hour complete with the drivers and the fuel. It was also agreed the plaintiff would maintain the repairs of the equipment while it was on the job, and in case of a major breakdown, the equipment was to be replaced. Additionally, the plaintiff furnished defendant with spare tires; however, the defendant’s employees were to perform the needed tire changes.
There was a conflict of testimony between witnesses, however, as to whether there was an agreement defendant would not deduct time lost for repairs from the basic hourly rate.
Edward Levy, president of the defendant company, testified he did not ever agree that time lost as a result of changing tires would not be deducted; he was not aware of any of his employees having made such an agreement; and he would never have agreed to something so “unfair.” However, he also said he never did think this would come up because the plaintiff’s tires had, on previous jobs, been in good condition. Levy said, however, that on the job with which this suit is concerned the plaintiff’s tires were in terrible condition, resulting in 168 flats, each requiring an average tire change time of about 20 minutes. In support of his testimony, Levy also produced written documentary evidence in the form of on-the-job records and corroborating testimony of several of his then employees. Although plaintiff insisted he had an agreement with several of defendant’s employees over the years that there would be no deductions for time lost due to tire repairs, he could not remember the names of any of these employees. Diaz admitted the other parts of the agreement had been made with Levy himself.
The defendant was invoiced for a total of $31,377.60, with a credit of $441.37 for diesel fuel. After deducting $2,727.97 for time lost, Levy rendered payment of $28,208.27 to Diaz without first notifying him of these deductions. Diaz then tried to contact Levy but was told he would be out of town for some time on vacation. Plaintiff subsequently deposited the check, complained to Levy about the deductions, and rebilled Levy by invoice for the deducted amount.
*583 With reference to the damage to the plaintiff’s trailer alleged in his reconvention al demand, two of Levy’s employees testified the flatbed of the trailer was already bent when it came into the yard but that it was operational. This fact was brought to Diaz’s attention before work wak started; however, during the job the flatbed cracked and was rendered inoperative.
It is axiomatic that in civil litigation the plaintiff must carry the burden of proof by a preponderance of the evidence. Although the plaintiff testified he had a verbal agreement with several of the defendant’s employees that there were to be no deductions for time lost for tire repairs, the contradictory testimony of the defendant and the nature of the contractual relationship does not support a finding by this court that the trial judge erred in concluding the plaintiff had not proven the existence of such an oral agreement.
In the case of J. H. Jenkins Contractor, Inc. v. City of Denham Springs, 216 So.2d 549 (La.App. 1st Cir. 1968), the court said at pages 554-555:
“* * * Admittedly, who knowingly and voluntarily assents to harsh contractual provisions may not on that account alone be relieved from the effects thereof. LSA-C.C. Articles 1945 and 1963. However, where the issue is the meaning and intent of a contract term, the fact that an informed and experienced person does not usually and customarily bind himself to unjust and unreasonable obligations, is a serious factor that must be considered in determining such an issue. Oil Field Supply & Scrap Material Company v. Gifford Hill & Co., 204 La. 929, 16 So.2d 483.
“In our judgment, plaintiff is also entitled to recovery on the theory of quantum meruit. This remedy, recognized in our courts since 1820, see Gilly v. Henry, 8 Mart. (O.S.) 402, insures enforcement of the obligation to pay the reasonable value of services rendered in the absence of express agreement. See 18 Louisiana Law Review, 209, and authorities therein cited. The rule is expressed as follows in Duggan Machine Co. v. Consolidated Well Servicing Co., La.App., 187 So.2d 124:
‘The doctrine of quasi contract and quantum meruit are found in Articles 1816, 2293 and 2294 of the Louisiana Revised Civil Code and have always been recognized by the courts of this state. Under these doctrines a person can, by his inaction and acceptance of the benefits of another’s labor, obligate himself to pay the reasonable value of another’s labor. In the case at bar when defendant delivered the mud pump, accepted the repairs made by plaintiff, and benefited from these repairs- by putting the equipment in use, defendant became obligated to pay the cost of the repairs. National Crankshaft Company v. Natural Gas Industries, Inc., 246 La. 395, 165 So.2d 1 (1964), and cases cited therein.’ ”
In the absence of an agreement not to allow deductions for loss of time in changing tires, it is reasonable to conclude Levy should be allowed to deduct time lost for tire repairs.
The contract in the present case is one of lease and, therefore, LSA-C.C. arts. 2693-2695 are applicable. In following the reasoning expressed by the Second Circuit in Reed v. Classified Parking System, 324 So.2d 484 (1976), if the present contract had encompassed a specific time period, rather than simply an hourly rate, then the defendant might be obligated to pay the entire amount owed since he remained in possession of the equipment in spite of its defective qualities. However, since this lease specified no total time or lump price but was set up on an hourly basis, it is a more reasonable interpretation that the parties did contemplate or should have contemplated the hourly rate would be due and owing only for the time the trucks could actually be used for their intended purpose.
The court also said in the case of Aetna Insurance Company v. Guidry, 216 So.2d 859, 861 (La.App. 3d Cir. 1968):
“Jurisprudence interpreting this article makes it clear that where the lessee suf *584 fers loss, resulting from a defect in the thing leased, he may recover damages from the lessor regardless of the lessor’s ignorance of the defect or latency thereof. * * *”
Since the defendant was being charged by the hour for the trucks and drivers, time spent in changing tires resulted in a loss for which the defendant is entitled to recover damages.
The defendant also argues that if a thing leased ceases to be fit for the purpose for which it was leased or if it is much impeded, the lessee may obtain annulment of the lease. In the case of Truck Equipment Company v. O'Reilly, 142 So.2d 184 (La.App. 4th Cir. 1962), the court concluded that a tractor and trailer were not suited for the purpose for which it was intended and therefore granted the lessee an annulment of the lease, citing LSA-C.C. art. 2699.
The case of Equilease Corporation v. Hill, 290 So.2d 423 (La.App. 4th Cir. 1974), is also applicable. The court, citing LSA-C.C. art. 2695, stated that in every contract of lease there is written by law a warranty that the leased property contains no defects and that it may be subjected to any of the uses for which it is intended. Accordingly, the court concluded the defendant was entitled to reimbursement unless he had effected a valid waiver of warranty. In the present case, no such waiver of warranty existed, therefore, we find the defendant was entitled to reimburesement through the deductions which he made before payment.
Plaintiff’s claim for damages to one of his trailers is not sustained by the proof offered. No witnesses to the alleged accident were produced to prove the damages claimed. The defendant, however, produced two former employees who testified that the trailer was already damaged when delivered for use and later became totally inoperative.
Without a showing of some fault on the lessee’s part, lessee is not liable for injuries and losses sustained by the lessor’s property or for wear and tear and unavoidable accidents (LSA-C.C. arts. 2719 and 2720).
For the reasons expressed herein we affirm the judgment of the trial court.

AFFIRMED.

SCHOTT, J., concurs in the result.